381 So.2d 1014 (1980)
Raymond Arthur DAUMER, Jr. and Linda J. Tuggle (Daumer)
v.
STATE of Mississippi.
No. 51735.
Supreme Court of Mississippi.
March 5, 1980.
Rehearing Denied April 16, 1980.
Prewitt & Prewitt, John W. Prewitt, Sr., Vicksburg, for appellants.
A.F. Summer, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
*1015 Before PATTERSON, BROOM and COFER, JJ.
BROOM, Justice, for the Court:
Murder conviction of Raymond Arthur Daumer, Jr. and Linda L. Tuggle (Daumer) occurred at their joint trial in the Circuit Court of Copiah County. Indictments charging them with the murder of Tuggle's son Kenneth "Bunky" Tuggle were returned by the Warren County Grand Jury, but upon the defendants' motion, venue was changed to Copiah County Circuit Court. Following the jury's verdict of guilty, the trial judge sentenced the defendants (Daumer and Tuggle) to life imprisonment in the custody of the Mississippi Department of Corrections. They appeal and urge reversal of their conviction on alleged (1) procedural errors, (2) faulty jury instructions, and (3) insufficient evidence. We affirm as to Daumer and reverse as to Tuggle.
Tuggle is the mother of Kenneth Tuggle, also known as "Bunky", who died January 13, 1978 after having been taken by Daumer and Tuggle to a Vicksburg hospital on December 24, 1977. From there the little boy (described as being very intelligent and handsome) was transferred to Baptist Hospital in Jackson, where, after brain surgery, he died. Daumer and Tuggle had lived together for some time but did not marry each other until after the child's death.
According to the evidence, Daumer and Tuggle and the child "Bunky" occupied a residence in Vicksburg. On Christmas Eve, 1977, several people were there and "Bunky" appeared to be active and healthy. An incident occurred in the den about whether "Bunky" had eaten some candy contrary to instructions. From the den, Daumer and "Bunky" had gone into "Bunky's" bedroom and Daumer was heard to say twice, "I'm not raising no liar in my house. Have you been eating candy?" Tuggle (having gone into the bedroom after Daumer and "Bunky") was overheard saying, "Ray, why don't you leave `Bunky' alone? It's Christmas Eve." Within a short time Tuggle was heard yelling that something was wrong with "Bunky". Those present entered Tuggle's bedroom where they found "Bunky" unconscious  his ear was "real red." At the two hospitals, numerous bruises, bite marks from a "large mouth" on his right shoulder, and other physical evidence of numerous injuries was found upon "Bunky's" body. The injuries included a partly healed broken collar bone. Dr. Scanlon (a pathologist), one of several physicians who testified, said that the little boy had been hit from the right side going down, which he related to the occasion when Tuggle and Daumer were in the bedroom with "Bunky". Dr. Scanlon stated the cause of death was a head injury which caused a "hematoma on the right side of the brain ... so large that it depressed the brain so greatly that the brain ceased to function and he died . . he did not get enough oxygen." Theory of the defense was that "Bunky" was an easily bruised child who had many times accidentally fallen (out of bed, etc.) and thereby received his fatal injuries.
First argument made by the defendants is that the court erred in overruling their motion for a second change of venue. They contend that after venue was moved from Warren County to Copiah County, venue should have been changed again because the people of Copiah County had become prejudiced by excessive publicity. At the hearing of the motion for the second change of venue, evidence was taken and exhibits were introduced concerning the media giving out publicity concerning the homicide in question. We have for many years followed the rule that whether venue will be changed is vested largely in the discretion of the trial judge. From the testimony in the record, we are unable to say that the trial judge erred in finding that the defendants could receive a fair trial in Copiah County. Contained in the record is the voir dire examination of prospective jurors which does not establish error. Juror process was served upon sixty-six veniremen from which twenty-five were excused by the court for various reasons. Forty-one of those summoned were found qualified and capable of giving a fair trial *1016 to the appellants. Upon the record, we cannot say that the trial judge abused his discretion by his failure to change venue the second time.
Second argument advanced by the defendants is that the trial judge erred in overruling their motion objecting to participation by the district attorney of the Ninth Judicial District (Warren County) in the trial of the case. It is to be noted that the joint indictment was returned against the two defendants in Warren County within the Ninth Judicial District. Venue was changed on their motion to Copiah County within the Fourteenth Judicial District, which has a different district attorney from the one who serves in Warren County. It is said that the district attorney of the Ninth Judicial District was without authority to represent the state in the Fourteenth Judicial District. The argument is made under Mississippi Code Annotated § 25-31-11 (1972), which states:
It shall be the duty of the district attorney to appear in the circuit courts and prosecute for the state in his district all criminal prosecutions. .. . (Emphasis added).
State ex rel. Patterson v. Warren, 254 Miss. 293, 180 So.2d 293 (1965) and Capital Stages v. State, 157 Miss. 576, 128 So. 759 (1930) are relied upon here as authority for the argument. We think the most pertinent decisional law is State ex rel. Cowan v. State Highway Commission, 195 Miss. 657, 13 So.2d 614 (1943), where we said:
It is not perceived why one having authority to sue has not the right to resort to the venue where the suit must be brought. He instituted this action in Hancock County, within his district, and it was transferred to Hinds County over his protest on motion of the Commission.
Section 25-31-11, supra, and Mississippi Code Annotated § 19-23-11 (1972) relate to the duties of prosecutors: district attorneys and county attorneys. These statutes charge the prosecutors with the duty of trying cases involving criminal offenses committed within their jurisdictions. We think it is logical to hold, and we now hold, that the duty of prosecutors requires them to discharge their duties in prosecuting criminal offenses until the prosecution terminates. Mere change of venue simply cannot reasonably terminate the duty of a prosecutor. Therefore, when the indictment was returned by the Warren County Grand Jury and venue was changed to Copiah County upon the appellants' own motion, there was nothing amiss in the prosecutor (doing statutory duties) completing his prosecutorial work. The record does not show any prejudice or disadvantage to either of the defendants on account of the district attorney of the Ninth Judicial District performing his duties in a judicial district encompassing Copiah County. As noted by the trial judge, from a practical standpoint the officers in question should have prosecuted this case, especially after having investigated the matter and presented it to the Warren County Grand Jury.
Thirdly, argument is made that the trial court erred in overruling the defendants' objection to certain remarks made by the prosecutor during closing argument. In his closing argument the prosecutor stated to the jurors, "I tell you, the hand of Linda Tuggle, Linda Tuggle Daumer, it drips the blood of Ken Tuggle". Objection was promptly made by defense counsel to the remark and the trial judge was asked to instruct the jury to disregard the remark. When the objection was overruled, a mistrial was requested which was also overruled and in their brief, the appellants say "The statement was very prejudicial and assumed facts that were not in evidence. There was never any testimony or evidence in this case that even suggested that Linda Tuggle Daumer had the blood of her son dripping from her hands."
We think the remarks in question were improper and that the objection to them should have been sustained. However, our conclusion is that the improper remarks were not intended and likely were not accepted by the jurors as meaning there was any testimony or evidence that blood was literally dripping from Tuggle's hands. The jury statement is in actuality a figure *1017 of speech or metaphor and although somewhat improper, does not reach reversible proportions. Clemons v. State, 320 So.2d 368 (Miss. 1975); Haralson v. State, 318 So.2d 891 (Miss. 1975); Chinn v. State, 276 So.2d 456 (Miss. 1973). We think the remarks were actually an attempt of the prosecutor to tell the jurors (as he viewed the case) that upon the evidence Tuggle was guilty and accountable for the crime though the evidence may not literally reflect that she ever struck her son. Surely, the remarks which referred only to Tuggle would not be any basis for reversal insofar as Daumer is concerned.
Fourth argument is that the court erred in giving state instructions pertaining to murder in this case and further erred in giving instructions numbered S-2, S-4, S-6, S-8, S-9, S-11 and S-12. In their brief, they contend that Instruction S-2 is "misleading and confusing... ." Upon the record as made we are unable to accept the argument that Instruction S-2 when considered alone or together with the other jury instructions would warrant reversal. Although the instruction is not a model as to wording and sentence structure, we do not believe that it was either misleading or confusing.
Jury Instruction S-4 is said to be "confusing and improper because the term `culpable negligence' was not adequately defined for the Jury." In considering this part of defendants' argument it is to be noted that the objection made at trial to S-4 was for the reason of "a total failure to show any negligence, much less culpable negligence," but upon appeal they argue that S-4 is erroneous for reasons other than those assigned in the trial court. It has been the rule for some time that when an objection to an instruction is made at trial on one ground and on another ground on appeal, we will not accept such argument as grounds for reversal.
Argument made concerning the granting of other jury instructions does not merit discussion. Having carefully examined in their totality the instructions given by the court, we are of the opinion that the appellants have failed to establish any reversible error in this regard.
Final argument is that the guilty verdicts are contrary to the overwhelming weight of the evidence. In addition to the testimony and evidence already set forth, we must consider other evidence in the record. According to her testimony, Sandra Palmer observed black and blue bruises all over "Bunky's" buttocks. Before the final incident on Christmas Eve, several witnesses had seen evidence of bruises in various places upon "Bunky's" body. One of these witnesses was Judy Foster, who related that Tuggle had told her that she (Tuggle) had been hit by her co-defendant, Ray Daumer, and according to Foster, she had concluded that Tuggle was afraid of Daumer.
Another witness, Sherry Leigh Thornton, testified about her visiting in the house of Tuggle and Daumer in late November, 1977. She described seeing a bruise on one of "Bunky's" eyes, and during her visit (according to her) defendant Daumer went into "Bunky's" room on that occasion after which appellant Tuggle came out within a short time and told her that Daumer was hitting "Bunky".
Another witness, Mrs. Mobley, testifying for the defendant, stated that in October before "Bunky's" death, Tuggle brought "Bunky" to her house and requested her opinion as to whether a doctor should see "Bunky's" shoulder. According to Mobley, Tuggle told her she was afraid to take "Bunky" to a doctor because a doctor who examined him on a previous occasion threatened to take the child away from her on account of child abuse.
We agree with the statement made in the appellee's brief that the web of circumstantial evidence in this case together with direct evidence was sufficient basis on which the jury might have concluded and did conclude that the defendant Daumer (but not Tuggle) was guilty of murder. This is in stark contrast to the total lack of evidence connecting the accused with the death of his alleged victim in Sanders v. State, 286 So.2d 825 (Miss. 1973). There a *1018 small child was caused to starve to death. Neighbors v. State, 361 So.2d 345 (Miss. 1978) is a case similar to the instant case in that the homicide victim, a 4-year old girl died from external blows  some were inflicted just before the child's death and some days earlier. Given the history related by various witnesses of seeing many bruises upon "Bunky" while Daumer was living in the house with "Bunky" and the co-defendant Tuggle, there was sufficient testimony to clearly establish the state's case against Daumer. The testimony of Tuggle herself when considered with other testimony, condemns Daumer. On the final occasion of "Bunky's" being alive in the house, it is obvious that the child's being accused of eating candy caused Daumer to be upset to the extent that inside the bedroom, according to the jury's finding, he undoubtedly battered "Bunky" and was heard to say, "I ain't raising no liar in my house." It was then that state witness Melton heard Tuggle urging Daumer to leave "Bunky" alone. Immediately afterward, Tuggle emerged form the room excited and screaming for help. Then in Tuggle's bedroom where Daumer had taken the child, the others found "Bunky" unconscious with a "real red" ear. After he was hospitalized, it was discovered that he had sometime incurred a broken collar bone (which had begun to heal) and severe brain damage which, according to doctors' testimony, resulted from considerable trauma.
We think that the totality of the evidence, together with reasonable inferences which the jurors were entitled to draw therefrom, was sufficient to convict Daumer of murdering the child. However, the evidence is not sufficient to support the conviction of the child's mother, Tuggle. This is especially true in view of the fact that on the final occasion when obviously the child received his fatal injuries in the bedroom, it was his mother Tuggle who was (according to state witness Melton) protesting Daumer's action and urging him to leave "Bunky" alone. Although the record would cause no one to commend Tuggle for the circumstances under which she kept her child and lived with Daumer, we do not believe that the testimony warrants affirmance of her conviction. There is not even a scintilla of evidence in the record showing that she ever struck the child, or that she ever encouraged or aided or abetted Daumer in striking or harming the child.
This case was well tried and the jury, according to its findings, was instructed that the defendants might be found guilty of murder or manslaughter (culpable negligence). As to the verdict of guilty of murder returned against Daumer, we cannot say that it was not warranted by the evidence. Neither can it be logically said that Daumer did not receive a fair trial. Accordingly, we must affirm as to him, but reverse and render as to Tuggle.
AFFIRMED AS TO RAYMOND ARTHUR DAUMER; REVERSED AND RENDERED AS TO LINDA TUGGLE DAUMER.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.