398 So.2d 1308 (1981)
Gail Haskel ALDRIDGE and Charles Aldridge
v.
STATE of Mississippi.
No. 52629.
Supreme Court of Mississippi.
May 27, 1981.
Rehearing Denied July 8, 1981.
*1309 F. Gerald Maples, Jones, Maples & Lomax, Pascagoula, for appellants.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and WALKER and BROOM, JJ.
SMITH, Presiding Justice, for the Court:
Gail Haskel Aldridge and Charles Aldridge, husband and wife, were tried and convicted in the Circuit Court of the Second Judicial District of Harrison County of felonious abuse and battery of their infant daughter under Mississippi Code Annotated section 43-21-27(b) (Supp. 1978) (current version at 97-5-39(2) (Supp. 1980). Each was sentenced to fifteen years imprisonment. From that conviction they have appealed, assigning several grounds for reversal.
Although there are reported cases of felonious abuse and battery of children in Mississippi, they are cases where the abuse resulted in death and the charge was murder. See Daumer v. State, 381 So.2d 1014 (Miss. 1980) and Sanders v. State, 286 So.2d 825 (Miss. 1973). Death did not result in the present case.
The case now before us involves what has been for some years widely recognized by the medical profession and diagnosed as the "battered child syndrome." See generally McCoid, The Battered Child and Other Assaults Upon the Family, 50 Minn.L.Rev. 1 (1966).
The medical definition of the syndrome was most forcefully documented in a 1962 report by a team of specialists in the field of pediatric radiology, which was based upon a nationwide study of the experience of seventy-one hospitals with abused children, as well as upon reports from the offices of seventy-seven district attorneys. The report stated:
[T]he syndrome should be considered in any child exhibiting evidence of possible trauma or neglect (fracture of any bone, subdural hematoma, multiple soft tissue injuries, poor skin hygiene, or malnutrition) or where there is a marked discrepancy between the clinical findings and the historical data as supplied by the parents.
[Id. at 10].
The evidence presented by the state consisted chiefly of the testimony of medical experts who had examined the infant, or had examined x-rays made of the infant. Neither of the appellants testified or presented any evidence whatever.
Appellants challenge the sufficiency of the evidence to sustain their conviction and argue that the trial court erred in denying their motion for a directed verdict of not guilty.
The long standing and well established rule in Mississippi as to the standard to be applied in determining whether evidence was sufficient to support a jury verdict is that, in reviewing such evidence, all evidence supporting or tending to support the verdict, together with all inferences supportive of the verdict which reasonably may be drawn therefrom shall be taken as true. Hubbard v. Morris, 275 So.2d 858 (Miss. 1973); McCollum v. Randolph, 220 So.2d 310 (Miss. 1969); Spell v. Ruff, 217 So.2d 7 (Miss. 1968).
The statement of the medical evidence contained in the state's brief appears to be a correct and concise synopsis thereof and is *1310 not seriously challenged by appellants in their reply brief. This statement is as follows:
Dr. Max Curry, the infant's pediatrician, testified that on May 3, 1980, both appellants, parents of the child, brought the infant to him, and both told him the child was crying all the time as if in pain even at rest. Dr. Curry examined the child completely and noticed the child was holding her left leg with a degree of flexion. He noticed the child's left leg was swollen and tender. He x-rayed the left leg and found a fresh chip fracture of the distal metaphysis of the left tibia. Both appellants told Dr. Curry that appellant Gail H. Aldridge had passed out the previous day and fallen with the child in her arms. Dr. Curry accepted their explanation at face value and put a cast on the child's left leg.
Two days later, on May 5th, the child was again brought to Dr. Curry by both parents. At this time Dr. Curry found a fresh fracture, which had not been present on May 3rd. He observed that the child's right leg and foot were swollen and tender. X-rays showed the child had suffered what was described by Dr. Curry as a bucket handle fracture where the whole metaphysis of the tibia is pulled loose from the bone. There were two (2) broken bones in the right leg. Dr. Curry stated that a pulling, twisting force had been necessary to produce the bucket handle fracture which the child had. Dr. Curry told appellants the second injury was worse than the first and felt an orthopedist should see the child. No further explanation, in addition to the mother's alleged fall May 3rd, was offered by appellants to explain the second injury.
Dr. Hal Bishop, the orthopedist, testified that on May 5th he had examined the victim and ordered x-rays for the whole child. The child's right leg at that time was swollen and the lack of bruises indicated the recency of the injury. Her left leg and right eye were bruised. Dr. Bishop confirmed the fracture to the child's right lower leg. The child's left leg, at the time he saw it, was in a cast. He described the fracture to the right leg as one from a rotational torque type stress. Appellee fails to see how Dr. Bishop's analogy of an adult who stepped in a hole could be beneficial to appellants' defense in view of the age of the infant. Dr. Bishop specifically stated the child could not have self inflicted the injury. He said, further, that the injuries to the right and left leg were of the same nature but had occurred at different times.
Dr. Richard Barlow, the radiologist, x-rayed the victim May 5th. The x-ray revealed two (2) fractures to the right ankle. He described the injury as a bucket handle fracture within a week old. He also took a second set of long bone x-rays which showed two (2) fractures at the left wrist, again of the bucket handle variety. Both major bones of the left wrist had been fractured and there was also a healing area up the left forearm which possibly indicated a third earlier fracture to the wrist. These fractures would have been about a month old. He described a bucket handle fracture as the result of a shearing or twisting force.
Appellants place emphasis on Dr. Barlow's testimony that bucket type fractures "typically are silent fractures" with "no visible deformity" and "seldom, uh, any significant swelling or discoloration." But appellee would also point out that Dr. Barlow did not examine this child and Dr. Curry and Dr. Bishop stated their examination of the child revealed screams, tenderness, swelling and bruises. Dr. Barlow also negated other physical conditions suggested by defense as causes of the fractures.
Obviously, the above evidence is circumstantial and in order to support the verdict must exclude every reasonable hypothesis save that of guilt. Sanders v. State, 286 So.2d 825 (Miss. 1973). Dr. Curry's testimony as to the nature of the fractures strongly tended to refute the explanation given him by the appellants as to how the fractures occurred. The other medical testimony as to some five additional fractures shown by x-rays of the infant revealed *1311 by their varying degrees of healing that they were inflicted over a comparatively short period of time and justified a finding that they were the results of a course of mistreatment extending over almost the entire brief life span of the child. There is no fact or circumstance in evidence tending in any way to support any other reasonable explanation of these injuries except that they were inflicted by its parents. No other person is shown to have had the custody or care of the infant save its parents. To sustain a verdict based on circumstantial evidence it is not necessary that such evidence exclude every possible doubt or theoretical supposition in no way related to the facts or circumstances of the case. It is enough that such evidence exclude every reasonable hypothesis of innocence. Andrews v. State, 237 Miss. 875, 116 So.2d 749 (1960).
The trial court properly denied appellant's motion for a peremptory instruction of not guilty and properly submitted to the jury the issue of their guilt or innocence of the offense charged.
It is argued by appellants that the trial court erred in allowing testimony which showed that the child had sustained fractures of its arms and legs, including x-rays of the injuries which showed varying degrees of healing indicating they were inflicted at different times. The appellants argue this evidence violated the general rule that evidence of other crimes is inadmissible to prove the defendant's guilt of the crime charged.
Chapter 494, section 4(b), Mississippi Laws of 1975 [43-21-27(b)], the statute under which the defendants were indicted, provides:
(b) Any person who shall intentionally burn or torture or, except in self defense, or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child under eighteen (18) years of age, and where such abuse or mutilation results in the fracture of any bone, the mutilation, disfigurement or destruction of any part of the body of such child, shall be guilty of felonious abuse and/or battery of a child, and upon conviction may be punished by imprisonment in the penitentiary for not more than twenty (20) years.
The Mississippi Legislature has defined "battered and abused child" in Mississippi Laws of 1977, chapter 474, section 1(h) [43-21-5(i)] as follows:
(i) "Battered and abused child" means a child whose parent, guardian or custodian, or any person responsible for his care or support, whether legally obligated to do so or not, has inflicted physical injury, including sexual abuse, or injuries other than by accidental means upon him as a result of abuse or neglect. In addition to physical injury, abuse encompasses a situation in which a child's mental health has been adversely affected in some substantial way as determined by examination by competent mental health professionals. [Emphasis added].
Following argument of counsel, the trial court ruled that this evidence was admissible, denying appellant's motion in limine to exclude it.
The State cites in support of the trial court's ruling the case of Wansley v. State, 339 So.2d 989 (Miss. 1976). In Wansley, this Court said:
In Engbrecht v. State, 268 So.2d 507 (Miss. 1971), this Court quoting from Brooks v. State, Miss., 242 So.2d 865, 869 (1971) stated:
The general rule is that in a criminal prosecution evidence which shows or tends to show that accused is guilty of the commission of other offenses at other times is not admissible, unless the other offenses are reasonably connected with that for which he is on trial. There is a substantial number of these exceptions.
Evidence of other crimes is admissible to prove identity of the defendant, scienter or guilty or criminal knowledge, criminal intent or purpose, motive, a plan or system of criminal action where a continuing offense is charged, or where other crimes form a part of *1312 the res gestae. Lee v. State, 244 Miss. 813, 146 So.2d 736 (1962); 29 Am.Jur.2d Evidence §§ 320, 321 (1967). The "acid test is its logical relevancy to the particular excepted purpose or purposes" for which the evidence of prior offenses is sought to be introduced.
[339 So.2d at 990].
We think this evidence, indicating a series of injuries inflicted upon the child, was properly admitted as an exception to the general rule that evidence of more than one offense cannot be admitted upon the trial of a criminal case. The evidence complained of strongly supports an ongoing, continuing and purposeful course of criminal abuse of the child and tends to negate the idea that the injuries were the result of a fall or other isolated accident. Readus v. State, 272 So.2d 659 (Miss. 1973); Strickland v. State, 209 So.2d 840 (Miss. 1968). The trial court did not err in admitting this evidence.
It is next assigned as error that Dr. Curry, in his testimony, volunteered the statement that he had notified the Biloxi Police Department of "a possible case of child abuse" following his second examination of the child on May 5. Appellant objected and the court, after hesitating over sustaining or overruling the objection, stated that he sustained the objection. Later, counsel for appellants was permitted by the court to move for a mistrial which the court overruled stating again that he had sustained appellant's objection to the testimony. No request was made by appellants that the jury be instructed to disregard the testimony. The objection made by appellants to the statement by Dr. Curry was nonspecific, assigning no ground therefor, and no request was made to the court to strike the answer or to instruct the jury to disregard it. In overruling appellant's motion for a mistrial the trial court stated:
BY THE COURT: All right. Now, you see, his question, actually, Dr. Curry's response was not, his answer was not responsive to the question and I sustained the objection. But, I think it's all right. And, besides, Gerald, after that, I think you asked him some questions that brought out the same thing, in effect.
The Court also noted that an instruction would be given to the jury to disregard all testimony to which an objection had been sustained. This instruction was granted and no other specific instruction was requested by appellants on this subject. The trial court did not commit reversible error in denying appellant's motion for a mistrial.
The other matters assigned and argued as error requiring reversal have been carefully examined in the light of the record and are found to be without merit.
The conviction and sentence will be affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.