[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 756 
A murder conviction against Lynn Cardwell and Thomas Cardwell for the death of their child and step-child, respectively, Shawn Everett Newton, was returned by the Circuit Court of Lauderdale County. The court sentenced both defendants to life imprisonment in the state penitentiary.
Thomas Cardwell and Lynn Cardwell appeal, assigning as error:
(1) The trial court erred in overruling defendants' motions for a severance;
(2) The trial court erred in admitting testimony of Mississippi Welfare Department employees without the proper predicate required by statute;
(3) The trial court erred in allowing into evidence:
(a) Proof of prior acts and offenses by the appellants; and
(b) Photographs of the deceased and
(4) The trial court erred in overruling defendant's motion for a new trial on the ground that the jury verdict was against the overwhelming weight of the evidence.
 I.
On April 11, 1982, in the early afternoon, seven-year old Shawn Everett Newton, the natural child of appellant Lynn Cardwell and the stepchild of appellant Thomas Cardwell, was admitted to the emergency room of Matty Hersee Hospital in Meridian, MS. Shawn, who weighed 27 pounds, was unconscious; his right pupil was dilated and fixed; his upper and lower extremities moved spastically. There was a large knot on the left side of his head and multiple bruises on his face. Because severe head injury was indicated, Shawn was rushed by ambulance to the University Medical Center in Jackson.
Shawn arrived at the University Medical Center in a state of cardio-respiratory arrest. A CAT scan indicated subdural hematoma (blood clotting beneath the skull) and swelling of the brain. Emergency brain surgery was performed, and the blood clot successfully removed, but the prognosis was very poor. On April 14th, brain function ceased, and on April 17th, death occurred.
On May 7, 1982, the grand jury returned an indictment jointly charging appellants Thomas Cardwell and Lynn Cardwell with the murder of Shawn Everett Newton. Motions for severance filed by both defendants were overruled by the trial court. *Page 757 
The State's case consisted of the following evidence. Robert Ryals, Thomas Cardwell's half-brother who lived next door to Thomas and Lynn at the Vance Trailer Park in Meridian, testified that, around noon on April 11, 1982, Lynn Cardwell came to his trailer and asked Ryals to go check on Shawn. According to Ryals, Lynn said she had caught Shawn eating out of the garbage can and had slapped him down to the floor. Carolyn Runyon, a social worker at the University Medical Center who interviewed Lynn Cardwell on April 11, 1982, testified that Mrs. Cardwell gave her the same explanation for Shawn's injuries. Velda Roberts, a social worker for the Lauderdale County Welfare Department who questioned Thomas and Lynn on April 12, 1982, was also told by Mrs. Cardwell that she slapped Shawn to the floor when she found him eating out of a garbage can.
Dr. Reeda Lyons, of the University Medical Center found a two inch by one inch bruise on the child's inner left leg, left side of the neck, left thigh and buttocks and three other bruises. The coloring of the bruises indicated that they were fairly new, having occurred within the last three or four days. According to Dr. Lyons, a bruise on the child's back was older than the others. The coloring of a bruise on the child's hip indicated that it was between 7 and 10 days old. Dr. Lyons opined that bruises of this sort could not be self-inflicted or the result of an accidental fall. Dr. Lyons' testimony regarding the location of bruises on the child and the probable cause was corroborated by Dr. Dennis Roland.
Dr. Sanford, associate professor of neurosurgery at University Medical Center, testified that a great deal of force was required to cause an acute subdural hematoma and that a push by an adult to the floor of a trailer could not cause an injury as severe as Shawn's. This opinion was also shared by Dr. Rodrigo Galvez, the physician who performed the autopsy on the child.
Joyce Garrett, the principal of College Park Elementary School in Gautier, MS, testified that on October 5, 1981, Shawn was brought to her office by his teacher. Shawn had a cut on the top of his head, red marks across his forehead, a large bruise on his left cheek, bruises on his mouth, a handprint on his right hip, and bruises on the left buttocks. Ms. Garrett's testimony was corroborated by Joyce Hammond, the school nurse at College Park Elementary. Dorothy Banks, a neighbor of the Cardwells during 1981, described Shawn as skinny and undernourished. Ms. Banks testified that she once saw Lynn Cardwell hit Shawn with a spoon so hard that it made a welt and that on another occasion Lynn hit Shawn with a spoon leaving a one and one-half inch gash. Another neighbor of the Cardwells, John Crocker, testified that he had never seen Tom Cardwell strike Shawn.
Ermie Windham, who owned a wood shop where Tom Cardwell's father worked, saw Shawn frequently during 1982. Ms. Windham testified that Tom called Shawn "S____ O____ B____" and "Bastard" and that Tom once bragged that he had made Shawn eat ex-lax until he was so sick that he fainted. According to Ms. Windham, Tom Cardwell also bragged that he threw Shawn out in the yard at 4:00 o'clock a.m. one morning.
At the conclusion of the State's case, both defendants renewed their motions for a severance on the ground that the evidence presented required antagonistic defenses. The motion was overruled, and the defendants rested.
 II. WAS THE TRIAL COURT IN ERROR IN OVERRULING THE DEFENDANT'S MOTION FOR A SEVERANCE?
The first issue raised by this assignment of error is whether a defendant jointly indicted for a capital crime not involving the death penalty has an absolute right to a separate trial or whether the question of severance is discretionary with the trial court. *Page 758 
Severance in felony cases is governed by Miss. Code Ann. §99-15-47 (1972), which provides as follows:
 Any of several persons jointly indicted for a felony may be tried separately on making application therefor before the order for a special venire in capital cases and before arraignment in other cases.
In Price v. State, 336 So.2d 1311 (Miss. 1976), this Court addressed the question of whether a separate trial is a matter of right where two or more persons are jointly indicted for a felony. This Court noted that the statutory language regarding severance had been changed from "shall" to "may" in 1880, held that the word "may" in section 99-15-47 should be given its ordinary meaning, and concluded that whether a severance should be granted is addressed to the sound discretion of the trial judge. 336 So.2d at 1310.
Appellants' argument is based upon Miss. Code Ann. section1-3-4 and Rule 4.04 Mississippi Uniform Rules of Circuit Court Practice. Miss. Code Ann. § 1-3-4 (Supp. 1983) defines "capital cases" as follows:
 The terms "capital case," "capital cases," "capital offense," "capital offenses," and "capital crime" when used in any statute shall denote criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary. The term "capital murder" when used in any statute shall denote criminal cases, offenses and crimes punishable by death, or imprisonment for life in the state penitentiary.
At the time this case was tried, Rule 4.04 of the Mississippi Uniform Rules of Circuit Court Practice provided that "the granting or refusing of severances of defendants in cases lessthan capital shall be in the discretion of the trial judge." (Emphasis added). Appellants argue that, since murder falls within the section 1-3-4 definition of capital cases, and Rule 4.04 only provides that severances shall be discretionary in cases less than capital, a defendant jointly charged with a capital crime is entitled as a matter of right to a severance.[1]
Appellants further argue that, even if the right to severance is discretionary, the trial court abused its discretion in this case since, though each defendant had a right to call the co-defendant as a witness, each co-defendant had a right to invoke the Fifth Amendment. This argument was previously advanced and rejected under similar facts in Fairley v. State,349 So.2d 1050 (Miss. 1977).
Appellants' constitutional argument is without merit and the denial of severance did not constitute an abuse of discretion.
 III. WAS THE TRIAL COURT IN ERROR IN ADMITTING TESTIMONY OF MISSISSIPPI WELFARE DEPARTMENT EMPLOYEES?
At the trial, Velda Roberts, a Lauderdale County Welfare Department employee, gave testimony regarding an interview with the appellants conducted on April 12, 1982 during the course of her employment. Jane Tanner, a Jackson County Welfare Department employee, gave testimony regarding her observations while visiting the Cardwell home during the course of her employment. Appellants assign as error the admission of this testimony without the proper predicate required by the Mississippi Youth Court Act.
Miss. Code Ann. § 43-21-257 provides:
 (1) Unless otherwise provided in this section, any record involving children, including valid and invalid complaints, and the contents thereof maintained by the department of public welfare, the department of youth services, or any other state agency shall be kept confidential and shall not be disclosed except as provided in section 43-21-261.
Miss. Code Ann. § 43-21-261 provides: *Page 759 
 (1) Except as otherwise provided in this section, records involving children shall not be disclosed, other than to necessary staff of the youth court, except pursuant to an order of the youth court specifying the person or persons to whom the records may be disclosed, the extent of the records which may be disclosed and the purpose of the disclosure. . . .
The objection to the Welfare worker's testimony was based on the fact that the worker had information obtained from Welfare Agency records which were confidential. Under the Act, records could be used in another court proceeding only with permission of the Youth Court under Miss. Code Ann. § 43-21-261. However, this record reflects no Youth Court proceeding for child neglect or abuse prior to this incident. The testimony did reflect complaints were made to the Welfare workers, but there is no indication that the complaint resulted in a Youth Court case.
The trial court was of the opinion that the confidentiality provision was enacted for the benefit of the child and that the child's parents charged with his death had no standing to object to the introduction of this testimony.
This Court concludes that no tangible Youth Court "record" was introduced. Also, the testimony of the Welfare workers did not evidence any information obtained by them from a youth court record. Their testimony addressed their personal observations and experiences. Therefore, this Court concludes no reversible error was made in permitting their testimony. The content of their testimony will be addressed further in the next assignment of error.
 IV. WAS THE TRIAL COURT IN ERROR IN ADMITTING (A) EVIDENCE OF PRIOR ACTS AND OFFENSES BY THE APPELLANTS: AND (B) PHOTOGRAPHS OF THE DECEASED? A.
At trial, the appellants by motion in limine objected to the admission of any evidence relating to incidents or events occurring prior to April 17, 1982, the date of the crime of murder charged in the indictment. The trial court overruled the motion and witnesses on behalf of the State were permitted to testify to events that occurred in the Fall of 1981, which tended to establish that Shawn had previously been subjected to abuse. Appellants assign this ruling as error.
The general rule in this state is that a conviction should be based upon evidence showing guilt of the particular offense charged in the indictment, and proof which shows or tends to show the accused is guilty of the commission of other crimes at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. Readus v. State, 272 So.2d 659 (Miss. 1973); King v.State, 66 Miss. 502, 6 So. 188 (1889). There are, however, several well-recognized exceptions to this general rule. Evidence of other crimes, for example, is admissible to prove motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the persons charged with the commission of the crime on trial. Readus, supra at 661 (and cases cited therein);May v. State, 199 So.2d 635 (Miss. 1967) (in prosecution of defendant for murder of wife, testimony of daughter that defendant had on a prior occasion fired a pistol at his wife held admissible to prove intent and absence of accident).
In Aldridge v. State, 398 So.2d 1308 (Miss. 1981), this Court held that in a prosecution for felonious abuse and battery of a child under Miss. Code Ann. § 97-5-39, evidence of prior acts of child abuse is admissible to negate the idea that the injuries resulted from an isolated accident. Aldridge *Page 760 
was subsequently reaffirmed in Shelton v. State, 445 So.2d 844
(Miss. 1984).
We conclude that such evidence is likewise admissible where death results and the prosecution is one for murder. UnitedStates v. Colvin, 614 F.2d 44 (5th Cir. 1980), cert. denied446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 802 (1980) (in prosecution of mother for second degree murder of daughter, evidence of prior injuries showing "pattern of abuse" held admissible to prove malice aforethought); United States v. Grady, 481 F.2d 1106
(D.C.Circ. 1973) (in prosecution of mother for second degree murder of daughter, evidence of previous beatings of child held admissible to prove intent, malice and absence of mistake or accident); Holland v. State, 346 N.W.2d 302 (S.D. 1984) (same);State v. Germain, 433 So.2d 110 (LA 1983) (same); Payne v.State, 249 Ga. 354, 291 S.E.2d 226 (1982) (same). The admissibility of such evidence, however, is subject to proof demonstrating that the defendant committed the prior offense.United States v. Colvin, supra at 45; United States v.Beechum, 582 F.2d 898, 912-913 (5th Cir. 1978).
This conclusion is in line with this Court's decision inDaumer v. State, 381 So.2d 1014 (Miss. 1980). Appellant Daumer and his wife were jointly convicted for the murder of the wife's natural son. At the trial, several witnesses testified to events tending to establish prior abuse of the child. On appeal, the appellants did not challenge the admissibility of the evidence of prior acts, but argued that the verdict was against the overwhelming weight of the evidence. In reviewing the evidence on appeal, this Court assigned weight to the testimony concerning prior abuse and the inferences deductible therefrom, thereby recognizing the probative value of such evidence.
This testimony was admissible and we find no error here.
 B.
At trial, the appellants objected by motion in limine to the introduction of photographs of the deceased child on the grounds that they were gruesome, inflammatory and had no probative value. The trial court ruled the photographs admissible.
It is well settled in Mississippi that the admissibility of photographs is a matter within the sound discretion of the trial judge. Edwards v. State, 413 So.2d 1007 (Miss. 1982). A photograph, though gruesome or inflammatory, may still be admissible as long as its introduction serves some useful evidentiary purpose. Butler v. State, 320 So.2d 786, 789 (Miss. 1975). In Stevens v. State, 458 So.2d 726, 729 (Miss. 1984), this Court upheld, as serving legitimate evidentiary purposes, the admission of photographs of a murder victim which "established both the multiplicity of blows administered and the extent of force and violence used." See also Clingon v. State,293 So.2d 823 (Miss. 1974); Dase v. State, 356 So.2d 1179
(Miss. 1978).
In the case sub judice, the photographs admitted into evidence corroborated the location of wounds, the multiplicity of wounds and the extent of force and violence used; therefore, the trial court did not abuse its discretion by admitting the photographs.
 V. WAS THE JURY VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Appellants' final assignment of error challenges the weight accorded to the evidence, emphasizing the circumstantial nature of the evidence and the unequal distribution of the evidence vis-a-vis each defendant.
Circumstantial evidence is entitled to the same weight and effect as direct evidence and this Court has upheld convictions based solely on circumstantial evidence. Tolbert v. State,407 So.2d 815 (Miss. 1981); Bogard v. State, 233 So.2d 102 (Miss. 1970). In Aldridge v. State, 398 So.2d 1308 (Miss. 1981), this Court upheld a *Page 761 
conviction for felonious abuse and battery which was based almost exclusively on medical testimony regarding the injuries sustained by the infant and the absence of any other reasonable explanation of the injuries.
We have carefully read the record and conclude that the evidence presented at trial amply supports a verdict of murder against the appellant Lynn Cardwell. Mrs. Cardwell's own explanation of Shawn's injury was that she pushed the child to the floor when she discovered him eating out of a garbage can. In addition to the considerable evidence of general neglect,[2]
several witnesses testified to specific instances involving Mrs. Cardwell's abuse of Shawn. One neighbor, for example, testified that Lynn once "backhanded" Shawn so hard that he rolled into the hallway. On another occasion, Lynn hit Shawn with a spoon, leaving a one and a half inch gash on his head. Another neighbor testified that when she asked about a large bruise on Shawn's face, Mrs. Cardwell explained that "he got slapped". In light of such evidence, it cannot be said that the jury verdict with respect to appellant Lynn Cardwell was against the overwhelming weight of the evidence.
The evidence with respect to Tom Cardwell is considerably less compelling. A neighbor observed Tom "switching" Shawn three times with a small branch for mishandling a dog; Tom often cursed Shawn and was observed on one occasion shaking his fist in Shawn's face; Tom bragged to a neighbor that he had once thrown Shawn out of the house into the yard at 4:00 a.m.; Tom bragged to a neighbor that he once fed Shawn ex-lax until Shawn was so sick that he fainted. At least one instance of severe abuse took place during a period when Tom was not living with Lynn and Shawn. No evidence places Tom Cardwell within the house trailer when the fatal injury was inflicted.
In Daumer v. State, 381 So.2d 1014 (Miss. 1980), the appellants (husband and wife) were jointly tried and convicted for the murder of the wife's natural son. On appeal, this Court affirmed the conviction as to the husband, but reversed the conviction of the child's mother, finding the evidence insufficient to support the conviction.
In the instant case, this Court concludes that the evidence warrants a reversal of Tom Cardwell's murder conviction. We do not address any other possible criminal charge. There is no evidence showing his presence when the child received an injury. To the contrary, the record evidences Lynn Cardwell did strike the child.
AFFIRMED AS TO LYNN CARDWELL. REVERSED AS TO THOMAS CARDWELL AND DEFENDANT THOMAS CARDWELL DISCHARGED ON CHARGE OF MURDER.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, J., dissents.
[1] This argument will not arise in the future. On October 26, 1982, Rule 4.04 was amended to read: "The granting or refusing of severances of defendants in cases not involving the deathpenalty shall be in the discretion of the trial judge." (Emphasis added)
[2] The child, though seven years of age, weighed only twenty-seven (27) pounds when admitted to Matty Hersee Hospital. Neighbors described Shawn as skinny, undernourished and often bruised, with dark circles under his eyes. He was sent home from school with lice.