893 So.2d 265 (2004)
William SCARBOUGH a/k/a William Scarborough and Theresa Catchings Scarbough, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-02016-COA.
Court of Appeals of Mississippi.
December 7, 2004.
Certiorari Denied February 10, 2005.
*267 William Scarbough (pro se), Pamela A. Ferrington, Lisa Mishune Ross, attorneys for appellants.
Office of the Attorney General, by Scott Stuart, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR MODIFICATION OF OPINION
BRIDGES, P.J., for the Court.
¶ 1. The motion for modification of opinion is granted. The previous opinion is withdrawn, and this modified opinion is substituted in its place.
¶ 2. Theresa and William Scarbough were convicted of felonious child abuse in a joint trial in the Circuit Court of Copiah County, Mississippi. William represented himself at trial with his court appointed counsel ordered to assist in his defense. Theresa was sentenced to twelve years and Williams was sentenced to sixteen years both in the custody of the Mississippi Department of Corrections. Theresa and William separately appeal their convictions on numerous independent issues. Those issues on appeal are addressed in this consolidated opinion.
STATEMENT OF THE ISSUES
ISSUES RAISED ON APPEAL BY THERESA SCARBOUGH
I. WAS THE EVIDENCE PRESENTED BY THE STATE INSUFFICIENT TO SUPPORT THE VERDICT RENDERED IN THE COURT BELOW?
II. DID THE TRIAL COURT ERR IN DENYING THE MOTION FOR JNOV BECAUSE THE STATE FAILED TO PROVE SCARBOUGH'S GUILT BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE?
III. SHOULD THE JURY HAVE MADE A FINDING OF GUILT OR INNOCENCE AS TO THE LESSER-INCLUDED CHARGE OF MISDEMEANOR CHILD ABUSE?
ISSUES RAISED ON APPEAL BY WILLIAM SCARBOUGH
IV. DID THE ASSISTANT DISTRICT ATTORNEY VIOLATE WILLIAM'S FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION *268 IN HIS CLOSING STATEMENT?
V. WHETHER THE TRIAL JUDGE ERRED IN ALLOWING A DHS SOCIAL WORKER AND INVESTIGATOR TO TESTIFY ABOUT EXTRA-JUDICIAL STATEMENTS WILLIAM MADE TO HIS WIFE IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION?
VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING SUSANNA JONES AND MILTON TWINER TO TESTIFY ABOUT PRIVILEGED AND CONFIDENTIAL STATEMENTS HIS WIFE MADE ABOUT HIM DURING THE COURSE OF THE INVESTIGATION?
VII. WHETHER THE TRIAL COURT ERRED WHEN IT DID NOT SUA SPONTE SEVER THE TRIAL OF THERESA AND WILLIAM SCARBOUGH?
VIII. WAS THE EVIDENCE PRESENTED BY THE STATE INSUFFICIENT TO SUPPORT THE JURY'S FINDINGS OF GUILT ON THE CHARGE OF FELONIOUS CHILD ABUSE?
IX. WHETHER WILLIAM IS ENTITLED TO A NEW TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL?
X. WHETHER THE TRIAL JUDGE COMMITTED PLAIN ERROR WHEN HE FAILED TO CONSIDER THE WHEELER FACTORS IN SENTENCING WILLIAM SCARBOUGH?

FACTS
¶ 3. Theresa and William Scarbough were married on September 14, 2001. Theresa brought a child into the marriage and William became the child's stepfather. On January 8, 2002, Theresa took her two and a half year old son to the Hazelhurst Clinic complaining that he fell on his shoulder and it was swollen. Theresa told the clinic personnel he had fallen on the metal hump in the back seat of the vehicle. While at the hospital the clinic personnel noticed her son had a black eye and a "healing burn" on his right hand.
¶ 4. After an initial x-ray indicating a fracture of the boy's right clavicle Martha Smith, the nurse practitioner, decided pain in his left shoulder made necessary more x-rays. Smith noticed additional rib fractures and changes in the bone. Smith sent the child to Hardy Wilson Hospital where more x-rays were taken and many more fractures were discovered. The child had "multiple rib fractures on both sides" some new and old, a clavicular fracture, two scapula fractures, and fractures to the humerus of both arms. The child was finally transported to the University Medical Center and was seen by an orthopedic surgeon, Dr. Patrick McCluskey, who found and treated a total of ten fractures. Dr. McCluskey testified that according to the different ages of the fractures they appeared to have happened during three separate instances over the course of about five weeks. The child had two fractures, the same age, in the upper humerus area of both arms near the socket. The doctors thought a two and a half year old could only receive this type of injury from someone violently shaking the child. There is practically no way a child could accidentally break both arms in that place at the same time.
¶ 5. The doctor suspected child abuse and the child was taken into the custody of the Department of Human Services. DHS interviewed Theresa and she explained that the burn on her son's hand was an accident when her husband stepped back and bumped the child into the space heater. *269 She explained that the black eye was due to his tripping and falling when trying to climb into the car. This incident she also believed caused the swollen and fractured shoulder. A cut on the child's eye Theresa claimed happened when the child stumbled and fell on the Big Wheel in his bedroom and hit a five gallon bucket. Theresa also says her son fell off the porch and had some swelling in his head but she failed to take the child to the hospital. In fact the child was not taken to the hospital for any of the previous injuries. She told the investigators that the only time she saw her husband punish the child was when he accidentally used the bathroom in his pants.

ANALYSIS
¶ 6. Our standard of review in a challenge to the sufficiency of the evidence is different, yet well established. We may reverse only where all credible evidence, along with all reasonable inferences, consistent with guilt and viewed in the light most favorable to the prosecution is such that a fair and reasonable jury could not find the defendant guilty. Gibby v. State, 744 So.2d 244, 245(¶ 6) (Miss.1999).
I. WAS THE EVIDENCE PRESENTED BY THE STATE INSUFFICIENT TO SUPPORT THE VERDICT RENDERED IN THE COURT BELOW?
VIII. WAS THE EVIDENCE PRESENTED BY THE STATE INSUFFICIENT TO SUPPORT THE JURY'S FINDINGS OF GUILT ON THE CHARGE OF FELONIOUS CHILD ABUSE?
¶ 7. In their appeal both Theresa and William argue the proof given to the jury only supports a finding of misdemeanor neglect and does not prove they intentionally injured her son. Under Mississippi Code section 97-5-39(2):
(2) Any person who shall intentionally (a) burn any child, (b) torture any child or, (c) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse and/or battery of a child and, upon conviction, may be punished by imprisonment in the penitentiary for not more than twenty (20) years.
It is their claim that the state did not prove beyond a reasonable doubt that either she or her husband burned, tortured, whipped, struck or otherwise abused the child. The crux of their argument is that the code language requires an intentional act on the part of the accused and that the state did not meet this burden.
¶ 8. Theresa, in support her claim, states that the incidents of her son falling she told the DHS worker about, all but one took place in the presence of her husband and that she had no first hand knowledge of them. The one incident that she was present for was the last of the injuries when her son fell while climbing into the car and hurt his shoulder. Theresa points to the testimony of the police investigator, Milton Twiner, who testified she was charged because she was with her son when he fell and failed to timely take him to the hospital. Those instances, she claims are not sufficient for a finding of felony child abuse.
¶ 9. Mississippi Code section 97-5-39(1) states in part that "[a]ny parent, guardian or other person who willfully commits any act or omits the performance of any duty.... shall be guilty of a misdemeanor...." Miss.Code Ann. § 97-5-39(1). Thus, the child abuse statute clearly contemplates acts of omission that result in "the abuse and/or battering of any child, as defined in Section 43-21-105(m) of the *270 Youth Court Law" as misdemeanor crimes. See Miss.Code Ann. § 97-5-39(1). There is, however, no language that designates all acts of omission to be misdemeanor offenses. Mississippi Code Annotated section 97-5-39(2) includes a catch-all, "or otherwise abuse." The Mississippi Supreme Court, in Buffington v. State, 824 So.2d 576, 581-582 (¶ 24) (Miss.2002), found that the term "otherwise abuse" is a clear indicator that the list provided is not exhaustive.
¶ 10. Failure to provide adequate medical treatment to a child you have seen fall or to a child you know to have fallen when such falls were severe enough to result in multiple fractures can be interpreted as intentional. This Court explained in Faraga v. State, 514 So.2d 295, 303 (Miss.1987), that the purpose of Mississippi Code Annotated section 97-5-39 is to protect the child. The conviction of those who fail to notice their child is in need of medical treatment or of those who simply fail to provide it is in keeping with the intentions of the statute.
¶ 11. We find that the evidence did support the jury's conviction of Theresa Scarbough. We further find that evidence William Scarbough's failure to take the child to receive medical treatment after witnessing numerous falls was sufficient to convict under the statute. This allegation of error is without merit.
II. DID THE TRIAL COURT ERR IN DENYING THE MOTION FOR JNOV BECAUSE THE STATE FAILED TO PROVE SCARBOUGH'S GUILT BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE?
¶ 12. In her appeal on this issue Theresa claims that the state's evidence against her was entirely circumstantial and that it did not adequately disprove all reasonable hypotheses of her innocence. Theresa notes that "[t]he state could rely on circumstantial evidence, but where a case is based wholly on circumstantial evidence, the state must prove [her] guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." Murphy v. State, 566 So.2d 1201, 1204 (Miss.1990). Theresa also cites to Daumer v. State, 381 So.2d 1014 (Miss.1980). In Daumer, a husband and wife were convicted of murdering the wife's natural child. Id. at 1017. The conviction of the husband was affirmed by the Mississippi Supreme Court but the conviction of the mother was reversed. Id. at 1018. In its decision the court held that "[t]here [was] not even a scintilla of evidence in the record showing that she ever struck the child, or that she ever encouraged or aided or abetted [him] in striking or harming the child." Id.
¶ 13. In Aldridge v. State, 398 So.2d 1308 (Miss.1981), a husband and wife were convicted of felonious child abuse and each sentenced to fifteen years in the custody of the Mississippi Department of Corrections. Id. at 1309. The evidence in the Aldridge case is similar to the evidence presented during the Scarbough's trial in that the theory of "Battered Child Syndrome" and several x-rays of fractures and doctor's testimony giving hypotheses of abuse were the primary evidence. Id. The court in this case believed the evidence appropriate and sufficient to uphold the convictions of both the husband and wife. Aldridge also held that the circumstantial evidence need not refute every possible theory of innocence. Id. Only those theories which are reasonable need to be refuted and in this case the doctor's testimony that child abuse is the only explanation available for this young child's injuries is sufficient circumstantial evidence. Id. at 1311.
*271 ¶ 14. We believe the situation at bar differs from the Daumer case in that someone can be convicted of committing child abuse through an act of omission. Furthermore, the Daumer case does not involve a conviction of child abuse but rather of manslaughter. Buffington, 824 So.2d at 581-582 (¶ 24). Like Aldridge the state presented the jury with circumstantial evidence in conjunction with direct evidence. Direct evidence like the x-rays and medical records of the child, testimony regarding primary child care and circumstantial evidence including theories of child abuse from the investigators, DHS workers and the treating physicians was presented. The prosecution did present enough evidence to the jury to sufficiently rule out all reasonable theories of innocence. Theresa's appeal on this issue is without merit.

III. SHOULD THE JURY HAVE MADE A FINDING OF GUILT OR INNOCENCE AS TO THE LESSER-INCLUDED CHARGE OF MISDEMEANOR CHILD ABUSE?
¶ 15. Theresa Scarbough claims the State did not sufficiently prove felonious child abuse and the jury should have deliberated on whether or not she was guilty of misdemeanor child abuse under Mississippi Code Annotated section 97-5-39(1). Our discussion of the sufficiency of the State's argument above specifically citing the Buffington and Aldridge cases renders this issue moot.

IV. DID THE ASSISTANT DISTRICT ATTORNEY VIOLATE WILLIAM'S FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION IN HIS CLOSING STATEMENT?
¶ 16. Initially, we note that no contemporaneous objection was raised at trial to the assistant district attorney's comments, and consequently the issue is not properly raised on appeal. Simmons v. State, 805 So.2d 452, 489 (Miss.2001) (citing Evans v. State, 725 So.2d 613, 670 (Miss.1997)). A trial error involving violation of a constitutional right may reach such serious dimension that this Court is required to address it, though first raised on appeal. Brooks v. State, 209 Miss. 150, 46 So.2d 94, 97 (1950). "Courts in this nation have also consistently held that the Fifth Amendment right not to be compelled to be a witness against oneself, incorporated as well in Art. 3, § 26 of the Mississippi Constitution, includes the right not to have the prosecution make any comment upon a defendant's exercise of that right." Whigham v. State, 611 So.2d 988, 995 (Miss.1992).
¶ 17. William Scarbough complains of the following statement made by the assistant district attorney in closing arguments:
Not once did either of these parents say that some other dude did it. Somebody else did it. Not once die either of these parents say, you know, there must be some other explanation. Somebody else had them. Neither parent gives adequate explanation of how this child was broken in two, how this baby was broken in two. What do they say. He was clumsy."
William claims this statement made by the State to the jury during closing arguments violated his Fifth Amendment right not to testify in his own defense.
¶ 18. After thoroughly reviewing the transcripts we find that the statements made by the district attorney did not penalize the defendant for exerting his constitutional privilege but rather were comments on the defendant's lack of a defense. As recognized in Jimpson v. State, 532 So.2d 985, 991 (Miss.1988), not every comment regarding the lack of any *272 defense or upon the defense presented is equivalent to a comment on the defendant's failure to testify. Attorneys are to be given wide latitude in making their closing arguments. Id. (citing Johnson v. State, 477 So.2d 196, 209 (Miss.1985)). Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify "by innuendo and insinuation." Id. (citing Wilson v. State, 433 So.2d 1142, 1146 (Miss.1983)). We find that the comments were not comments on the failure to testify and without merit and that the defendant's objection is procedurally barred by the defendant's failure to make a contemporaneous objection.

V. WHETHER THE TRIAL JUDGE ERRED IN ALLOWING A DHS SOCIAL WORKER AND INVESTIGATOR TO TESTIFY ABOUT EXTRA-JUDICIAL STATEMENTS WILLIAM MADE TO HIS WIFE IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION?
¶ 19. Again, we initially state that we will consider this issue despite the fact it was not contemporaneously objected to during trial. A trial error involving violation of a constitutional right may reach such serious dimension that this Court is required to address it, though first raised on appeal. Brooks v. State, 209 Miss. 150, 46 So.2d 94, 97 (1950).
¶ 20. The investigator and DHS worker who testified at trial both gave testimony regarding William's involvement in the child's injuries as told to them by Theresa. William claims this hearsay testimony coupled with Theresa invoking her right not to testify resulted in a violation of his Sixth Amendment right to confrontation.
¶ 21. In Seales v. State, 495 So.2d 475, 480(Miss.1986) the Mississippi Supreme Court interpreted several United States Supreme Court cases and adopted a rule regarding corroborative witness testimony requiring that there is a showing of "particularized guarantee of trustworthiness" to permit introduction during the state's case in chief. In Lee v. Illinois, 476 U.S. 530, 530-31, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) the court required an "interlocking" of the testimony and factual recitations.
¶ 22. In the defense given by Theresa's defense counsel and by William himself in his pro se representation there was the requisite "interlocking." The statements both William and Theresa gave the investigators were similar. Both said Theresa was not present when the child's hand was burned on the space heater. Also, William never attempted to offer a contradicting statement of how the injuries occurred. Therefore the testimony given by investigators regarding statements made by Theresa about her husband do not violate William's Sixth Amendment rights.

VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING SUSANNA JONES AND MILTON TWINER TO TESTIFY ABOUT PRIVILEGED AND CONFIDENTIAL STATEMENTS HIS WIFE MADE ABOUT HIM DURING THE COURSE OF THE INVESTIGATION?
¶ 23. This court declines to hear this issue for two separate and valid reasons. First William did not preserve this issue for appeal with a contemporaneous objection and this court does not address alleged errors the trial court did not have an opportunity to address. Dunn v. State, 693 So.2d 1333, 1339 (Miss.1997). Second in the Mississippi Rules of Evidence 504(d) there are exceptions to the marital privilege.
(d) Exceptions. There is no privilege under this rule in civil actions between the spouses or in a proceeding in which one *273 spouse is charged with a crime against (1) the person of any minor child or (2) the person or property of (i) the other spouse, (ii) a person residing in the household of either spouse, or (iii) a third person committed in the course of committing a crime against any of the persons described in (d)(1), or (2) of this rule.
Clearly the crime of felonious child abuse falls within this exception and there is no privilege available for William to claim.

VII. WHETHER THE TRIAL COURT ERRED WHEN IT DID NOT SUA SPONTE SEVER THE TRIAL OF THERESA AND WILLIAM SCARBOUGH?
¶ 24. "[T]he decision whether to grant a severance depends on whether the severance is necessary to promote a fair determination of the defendant's guilt or innocence." Carter v. State, 799 So.2d 40, 44(¶ 13) (Miss.2001). "Where the testimony of one defendant did not tend to exculpate himself at the expense of another and there does not appear to be a conflict of interest among the co-defendants, severance is not required." Id. at 45. Severance is also proper where the evidence points more to the guilt of one co-defendant than the other. Payton v. State, 785 So.2d 267, 269 (Miss.1999). Court rules place the decision whether to grant or deny a severance in non-death penalty cases within the discretion of the trial court. URCCC 9.03. Unless one can show actual prejudice, a trial court cannot be found to have abused its discretion. Payton, 785 So.2d at 269. Defendants jointly indicted for a felony are not entitled to separate trials as a matter of right. Price v. State, 336 So.2d 1311, 1312 (Miss.1976).
¶ 25. In his appeal on this matter William does not point to any actual prejudice which may have occurred as result of trying these cases jointly. Also, William dose not indicate nor does the record reflect that William ever requested the cases to be severed. Therefore his appeal on this issue is without merit.

IX. WHETHER WILLIAM IS ENTITLED TO A NEW TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 26. William Scarbough represented himself in this trial. Mark King was appointed by the state to represent him but William wished to represent himself and asked King to withdraw. The trial judge did not allow King to withdraw completely but did allow William to represent himself with King available for assistance during the trial. William claims he was denied effective assistance of counsel because King failed to advise him that he needed to move to sever the trials, that he needed to object to testimony during closing arguments and that he should have objected to testimony regarding potential spousal privilege. All of these claims are issues he has raised as errors on appeal and have been discussed above.
¶ 27. It has been established by the Mississippi Supreme Court that as stand-by counsel, a defense attorney is "without authority, discretion or control and the charge that he rendered constitutionally ineffective assistance is without merit." Estelle v. State, 558 So.2d 843 (Miss.1990). Estelle held that where a defendant declines appointed counsel and proceeds to represent himself with appointed counsel only standing by to provide assistance if called upon that the defendant will not be heard to complain on appeal of ineffective assistance of counsel. Estelle, 558 So.2d at 847. The case sub judice is one such case and therefore this issue is without merit.

X. WHETHER THE TRIAL JUDGE COMMITTED PLAIN ERROR WHEN HE FAILED TO CONSIDER THE *274 WHEELER FACTORS IN SENTENCING WILLIAM SCARBOUGH?
¶ 28. William Scarbough was sentenced to sixteen years in the custody of the Mississippi Department of Corrections while his wife, Theresa was sentenced to twelve. William claims that the trial judge should have considered the Wheeler factors when considering sentencing of co-defendants. In United States. v. Wheeler, 802 F.2d 778, 783 (5th Cir.1986), the court held:
Factors such as whether the crime was a first offense, whether a defendant was mastermind or follower, and whether a defendant cooperated with the prosecution can justify giving codefendants widely different sentences. United States v. Nichols, 695 F.2d 86, 93-94 (5th Cir.1982). As long as the trial court stays within statutory bounds and respects procedural safeguards, the sentence may be reversed only for "arbitrary or capricious abuse of discretion." United States v. Cimino, 659 F.2d 535, 537 (5th Cir.1981). (emphasis added)
¶ 29. William fails to note in his brief how their sentences are wildly different and does not claim that the sentence was either outside the statutory guidelines or an abuse of discretion on the part of the judge. Jackson v. State, 551 So.2d 132, 149 (Miss.1989) holds that sentencing is within the discretion of the trial judge subject to statutory and constitutional limitations. Mississippi Code section 97-5-39(2) allows a sentence of no more than twenty years when someone is convicted under this statute. Finding the sentence within the statutory guidelines, we do not find any error on the part of the trial judge.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF FELONIOUS CHILD ABUSE OF BOTH WILLIAM SCARBOUGH AND THERESA SCARBOUGH AND SENTENCE OF SIXTEEN AND TWELVE YEARS, RESPECTIVELY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, AND BARNES, JJ. CONCUR. ISHEE, J., NOT PARTICIPATING.