475 So.2d 1136 (1985)
Christine JOHNSON
v.
STATE of Mississippi.
No. 54917.
Supreme Court of Mississippi.
September 4, 1985.
Rehearing Denied September 25, 1985.
*1138 Thomas H. Pearson, Clarksdale, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Christine Johnson was convicted by the Circuit Court of Coahoma County, Mississippi, for the murder of her three-and-a-half month old son, Ceddrick, and sentenced to life in the custody of the Mississippi Department of Corrections.
On the night of January 22, 1982, police officers were summoned to the apartment of Christine Johnson. There they found the body of Christine's 3 1/2 month old son, Ceddrick. The baby was badly bruised and cut.
Johnson was interrogated twice at her apartment that night and after the second interrogation was arrested. At the trial, her defenses consisted of denial, accident and insanity. Johnson appealed the conviction and assigned the following errors:

I.

WAS THE INDICTMENT FATALLY DEFECTIVE FOR FAILING TO ALLEGE MALICE AFORETHOUGHT?
The indictment under which Christine Johnson was tried reads, in pertinent part, as follows:
2. Did unlawfully, wilfully, feloniously and without authority of law kill and murder Ceddrick Johnson, a human being, while the said Christine Johnson was engaged in acts emminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, in violation of MCA 97-3-19(1)(b).
Mississippi Code Annotated 99-7-37 (1972), provides as follows:
In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased. ... (Emphasis added).
Johnson contends that § 99-7-37 mandates the use of the language "malice aforethought", and that it was error to overrule her demurrer to the indictment for its failure to use that language. She is wrong.
Rule 2.05, Miss. Uniform Criminal Rules of Cir. Court Practice sets out what form the indictment shall be in. It provides as follows: "The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him. Formal or technical *1139 words are not necessary in an indictment, if the offense can be substantially described without them." (Emphasis added).
This indictment followed the language of the "depraved heart" murder statute as set out in Mississippi Code Annotated § 97-3-19(1)(b) (Supp. 1984). Whether an indictment in the language of the statute is sufficient, or whether other words or acts are necessary to properly charge the commission of a crime is dependent upon the nature of the offense and the terms in which it is described by the statute. If the statute fully and clearly defines the offense, the language of the statute is sufficient. Jackson v. State, 420 So.2d 1045, 1046 (Miss. 1982), (following numerous cases cited therein).
It is our duty to harmonize our statutes if they appear to conflict, and because we find no conflict between these two statutes that harmony comes readily. § 97-3-19(1)(b) is sufficient in language to properly charge one with "depraved heart" murder. § 99-7-37 does not mandate "malice aforethought" in every murder indictment, but merely proclaims that an indictment in that form will be sufficient.
Accordingly, in keeping with our statutes, case law and criminal procedure rules, we find that it was not error to overrule the demurrer to this indictment. The case of Buchanan v. State, 97 Miss. 839, 53 So. 399 (1910), which held that a murder indictment which leaves out the word malice is "fatally defective", is therefore overruled.

II.

WAS IT ERROR TO REFUSE JOHNSON'S INSTRUCTION D-1 ON MALICE AFORETHOUGHT AND OVER OBJECTION GRANT STATE'S INSTRUCTION S-1 WHICH DID NOT REQUIRE A MALICE AFORETHOUGHT FINDING BY THE JURY?
It has long been the case law of this state that malice aforethought, premeditated design, and deliberate design all mean the same thing. See Dye v. State, 127 Miss. 492, 90 So. 180 (1921); Hawthorne v. State, 58 Miss. 778 (1881); McDaniel v. State, 8 Smed. and M. 401 (Miss. 1847). Furthermore, in Talbert v. State, 172 Miss. 243, 159 So. 549, 551 (1935), the Court had under consideration two jury instructions, one of them being in the precise language of the "depraved heart" murder statute. The Court, referring to the forerunner of § 97-3-19(1)(a) and (b) (sec. 985 subds. (a) and (b) of the Code of 1930), said the following:
This statute but epitomizes the common law found.... Murder is the voluntary killing of any person of malice prepense or aforethought, either express or implied by law; the sense of which word malice is not only confined to a particular ill-will to the deceased, but is intended to denote ... an action flowing from a wicked and corrupt motive, a thing done malo animo, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty and fatally bent upon mischief. (Emphasis added), (citations omitted).
The "depraved heart" murder statute provides as follows:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
... .
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;

... .
(Emphasis added).
State's Instruction S-1 reads as follows:
The defendant, Christine Johnson, has been charged by an indictment with the crime of Murder, for having caused the death of Ceddrick Johnson while acting in a manner eminently dangerous to others *1140 and evincing a depraved heart, regardless of human life.
If you find from the evidence in this case beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence that:
1. The deceased, Ceddrick Johnson, was a living human being; and
2. Ceddrick Johnson was killed by the defendant Christine Johnson, without authority of law; and
3. The defendant, Christine Johnson, was engaged in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, when the mortal or killing blow was struck, whether or not she had any intention of actually killing Ceddrick Johnson; then you shall find the defendant guilty of Murder.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence, then you shall find the defendant not guilty.
The statute itself, therefore, expressly dispenses with the requirement of premeditated design, or malice aforethought. Further, if malice aforethought be required, it would be most difficult to conclude that it is not synonymous with "depraved heart". This Court has held that "synonymous phrases or interchangeable words may be used in a jury instruction and the jury still be properly instructed." Lancaster v. State, 472 So.2d 363, 367 (Miss. 1985) (citing Erving v. State, 427 So.2d 701 (Miss. 1983).
More importantly, Instruction S-1 followed the language of the statute; therefore, it was proper. This assignment is without merit; nor is the argument that, "feloniously" and "willfully" should have been contained in Instruction S-1 persuasive. The statute simply does not contain these words; moreover, "without authority of the law" and "engaged in the commission of an act", both used in the instruction, are respectively synonymous with "feloniously" and "willfully". See Lancaster, supra.

III.

DID THE LOWER COURT ERR DURING VOIR DIRE IN REFUSING TO ALLOW JOHNSON TO QUESTION JURORS ABOUT THEIR PERSONAL FEELINGS ON ALCOHOL USE AND IF THE JURORS COULD RETURN A NOT GUILTY VERDICT IF THERE REMAINED A REASONABLE POSSIBILITY THAT THE DEFENDANT WAS INNOCENT?
During voir dire, Johnson's lawyer asked for a show of hands from anyone with conscientious scruples against the use of alcohol. No hands were raised. He then asked if any of the jurors had used alcohol within thirty days, and several hands were then raised. The lawyer then asked for a showing of hands from those jurors who had not used alcohol within thirty days. At this juncture, the trial judge stated, "that would be those who did not raise their hands the last time."
The lawyer then asked if the jurors would be prejudiced against Johnson just because she had partaken of alcohol. Several jurors shook their head indicating a negative response. The trial judge thereupon directed Johnson's lawyer to have the panel raise their hands or stand up, rather than respond with head nods. Voir dire proceeded but there were no further questions concerning the use of alcohol.
Later in the voir dire, Johnson's lawyer attempted to ask if the jurors understood it was their duty to return a not guilty verdict so long as there remained a "reasonable possibility that the defendant is innocent." The trial judge interrupted and said that the court "will instruct the jury as to what the burden is,... you are misusing the words and the terms."
Johnson makes no meaningful argument in support of this assignment and as a general rule unsupported assignments of error are not considered by this Court. *1141 Harris v. State, 386 So.2d 393, 396 (Miss. 1980).
Since the issue raised here is controlled by our decision in Jones v. State, 381 So.2d 983 (Miss. 1980) cert. den. 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300, we will discuss it. In Jones, supra, we held that the trial court has broad discretion in passing upon the extent and propriety of questions addressed to prospective jurors and error will be found only where clear prejudice to the accused results. Id. at 990.
Johnson was not restrained in asking jurors their attitudes about alcohol. In the first instance, the lawyer simply asked an inartful question, the obvious answer to which was pointed out by the trial judge. In the second instance, the trial judge directed that responses be by standing or the raising of hands. Preserving fair and reasonable trial procedure is the duty of the trial judge. He did his duty. We concede that from the pages of the record we are unable to determine the demeanor of the judge, merely his words. These words were not abusive of Johnson or her lawyer. There is nothing to indicate that Johnson was prejudiced before the prospective jurors by any judicial misconduct during this phase of the trial. No error occurred.

IV.

DID THE LOWER COURT ERR BY FREQUENTLY INTERRUPTING DEFENSE COUNSEL?
Under this assignment, Johnson does no more than make several statements describing how a judge should conduct himself and a trial, and follows those general statements with a string of case citations supporting the statements. With this catalogue of general judicial conduct, we wholeheartedly agree. However, no instances of such misconduct by the trial judge in this case was brought to our attention by Johnson's brief. Relying upon Harris, supra, we are entitled to disregard this assignment, as the state urges us to do. See also, Dozier v. State, 247 Miss. 850, 157 So.2d 798 (1963). Because, however, such assignments strike at the very foundation of our judicial system, a fair and impartial trial conducted by a fair and impartial magistrate, we are constrained and have searched the record ourselves for such abuses. We have found none.
On one occasion, Johnson's lawyer misquoted a witness while questioning that same witness. The state objected to the inaccuracy, and the trial judge sustained the objection and directed the lawyer not to misquote the witness. The judge may explain his rulings when he sustains an objection, so long as he does not comment upon the evidence in a prejudicial manner. Haralson v. State, 314 So.2d 722 (Miss. 1975); Ratliff v. State, 313 So.2d 386 (Miss. 1975).
There is no merit to this assignment.

V.

WAS JOHNSON ERRONEOUSLY DENIED A MISTRIAL BECAUSE THE TRIAL JUDGE MISTAKENLY INFORMED THE JURY THAT JOHNSON WAS CHARGED WITH FELONIOUS ABUSE OF THE CHILD?
The court in addressing the prospective jurors during voir dire read to them the first count of the indictment which the state had elected not to proceed under. The indictment charges Johnson with murdering Ceddrick Johnson while engaged in felonious child abuse.
The judge was informed that he had read the wrong indictment. He then informed the jury that he had been corrected and that they were to disregard the last statement he made. He emphasized to them that an indictment is merely a charge, and it was not to be taken by them as proof or evidence of guilt whatsoever. He had, immediately before reading the wrong indictment, instructed the jury that the defendant is presumed to be innocent and the state has the burden of proving her guilt and that the indictment is not proof or evidence of guilt. He pointed out that an indictment is merely a formal vehicle to *1142 bring an individual to trial. Furthermore, at the conclusion of the trial, the jury was instructed by the court that the fact that the defendant has been indicted is not evidence of the facts charged and should not be considered as evidence of guilt.
The admonition of the trial judge to disregard his reading of the wrong indictment was adequate to remove any prejudice that might have formed in the minds of the jurors. See Carrol v. State, 391 So.2d 1000 (Miss. 1980); Smith v. State, 457 So.2d 327 (Miss. 1984). It is presumed that jurors follow the instructions of the court. Payne v. State, 462 So.2d 902, 904 (Miss. 1984); Carter v. State, 450 So.2d 67, 69 (Miss. 1984). To presume otherwise would be to render the jury system inoperable.
No error was committed.

VI.

WAS IT ERROR TO ALLOW TESTIMONY OF OLD INJURIES, WHICH DID NOT CONTRIBUTE TO DEATH, WHICH MAY NOT BE ATTRIBUTABLE TO JOHNSON, AND WHICH EVIDENCED THE COMMISSION OF OTHER CRIMES?

VII.

WAS IT ERROR TO ADMIT IN EVIDENCE X-RAYS OF OLD INJURIES?
When Dr. Rodda, who performed the autopsy on Ceddrick Johnson's body, was called to testify, Johnson's lawyer asked for a bench conference which was held outside the hearing of the reporter. The record is silent as to what took place.
Dr. Rodda then gave detailed testimony of the child's injuries and the cause of death. He testified that the body bore numerous and extensive injuries, of varying age, to the arms, legs, chest, face and head. He further testified that the cause of death was extensive brain damage caused by a blow to the head. At no point in the record did Johnson object to this testimony.
The state then called Dr. Pollard, who had done the x-rays at the request of Dr. Rodda. Again there was a bench conference. Again the record is silent. Dr. Pollard testified as to the injuries and specifically noted that the x-rays showed some of the bones had been initially fractured and then refractured. The x-rays were then offered into evidence and Johnson's lawyer objected "for the reasons already stated." The objection was overruled.
No reasons had already been stated in the record. It is now claimed that before Dr. Rodda testified Johnson objected to any testimony of old injuries, injuries that did not contribute to the death, and injuries that were not proved to have been inflicted by Johnson. It is further claimed that similar objections were made prior to Dr. Pollard's testimony. The record is silent on these objections.
We may read a record and rule upon what it contains. That is why records are made. One who fails to utilize the record when it is being made will be without its protection on appeal. We may not speculate upon nor consider matters not in the record. Harris v. State, 386 So.2d 393, 396 (Miss. 1980).
We are assured that these objections were preserved through the office of a bill of exceptions, but no such bill was found. Nonetheless, we will treat the assignments as though they were properly before us for the benefit of the bench and bar.
In Cardwell v. State, 461 So.2d 754 (Miss. 1984), parents were convicted of murder for the death of their child. Testimony was admitted of events which occurred prior to the date of the crime charged. The testimony tended to establish that the child had previously been subjected to abuse. The Court stated the general rule that other crimes are inadmissible to show commission *1143 of the crime charged and then set out the exceptions to the rule, as follows:
Evidence of other crimes, for example, is admissible to prove motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the persons charged with the commission of the crime on trial. Readus [v. State], 272 So.2d [659] at 661 ([Miss]. 1973).
Id. at 759.
The Court cited Aldridge v. State, 398 So.2d 1308 (Miss. 1981), which was a child abuse case where there was testimony and x-rays by medical experts concerning injuries of the child which tended to establish previous abuse. The Court noted that in Aldridge it was held that evidence of prior acts was admissible in a felonious child abuse case to "negate the idea that the injuries resulted from an isolated accident." The Cardwell Court concluded that such evidence was "likewise admissible where death results and the prosecution is one for murder." Id. at 759, 760 (citations omitted). The Court did point out that the admissibility is "subject to proof demonstrating that the defendant committed the prior offense". Id. at 760. One of the cases cited for this proposition is United States v. Colvin, 614 F.2d 44 (5th Cir.1980). In that case, the Fifth Circuit Court of Appeals said that such proof was a "predicate to the determination that the extrinsic evidence is relevant." 614 F.2d at 45. That court went on to determine that a sufficient predicate had been laid in light of the evidence that showed the appellant was in exclusive control of the children prior to the time the injuries occurred and in light of the expert medical testimony contradicting her version of accidental causes.
Johnson testified that she had been drinking that day. She entered her apartment with Ceddrick in her arms and proceeded to his bedroom where she collapsed. She testified that the fall, in conjunction with a previous accidental fall, was the cause of death. She further testified that no one else was in her apartment that day except herself, Ceddrick and her other three children. The testimony at trial established that though other people had kept Ceddrick, he had predominantly been with Johnson for approximately a month prior to his death. Both doctors' testimony discounted Johnson's version of accidental causes.
The evidence was admissible to negate the idea that death resulted from an isolated accident.

THE MARIJUANA ASSIGNMENTS

VIII.

THE MOTION TO SUPPRESS THE INTRODUCTION OF THE MARIJUANA SHOULD HAVE BEEN SUSTAINED.

IX.

THE MOTION TO DELETE ALL REFERENCES TO MARIJUANA AND DOPE IN JOHNSON'S STATEMENT SHOULD HAVE BEEN SUSTAINED.

X.

WITNESS WILMESHERR SHOULD NOT HAVE BEEN ALLOWED TO TESTIFY AS TO THE MARIJUANA.

XI.

WITNESS TILLMAN SHOULD NOT HAVE BEEN ALLOWED TO TESTIFY THAT SHE SAW JOHNSON SMOKE POT.
During the investigation at Johnson's apartment on the night of the incident, the coroner seized what appeared to be marijuana seed and marijuana cigarette butts. Johnson objected to the introduction of such into evidence. The objection was overruled. At trial, Wilmesherr, the expert who had analyzed the marijuana, identified the seed as visibly appearing to be marijuana but identified the butts as positively containing marijuana. The items were then admitted into evidence.
*1144 The state was entitled to put before the jury all the evidence which would tend to show that Johnson killed Ceddrick while engaged in an act eminently dangerous and evincing a depraved heart, unless such evidence is more prejudicial than probative. See Page v. State, 369 So.2d 757, 761 (Miss. 1979). The fact that Johnson may have been high on marijuana while physically abusing her child would tend to show that she was engaged in an act eminently dangerous and evincing a depraved heart. The question then becomes whether the marijuana evidence was relevant to this issue; and if so, was it too prejudicial.
No evidence was introduced which tended to show that Johnson had smoked marijuana the day of the incident. She denied doing so, while admitting she had been drinking. No evidence was introduced showing that the marijuana cigarettes had been recently smoked; instead, there was testimony that they were cold when seized. The probative value of the marijuana is concededly much less than the probative value of the prior injuries to the child and goes to the very edge of not being relevant at all; in any event, whatever probative value existed was outweighed by the prejudicial effect to Johnson.
The admission of the marijuana is saved from reversible error by the fact that at the time the evidence was admitted, the insanity defense was still before the jury. When the defense of insanity is raised, the entire life of the defendant is thrown open for admission into evidence. Taylor v. State, 452 So.2d 441, 448 (Miss. 1984); McLeod v. State, 317 So.2d 389 (Miss. 1975); Elmore v. State, 143 Miss. 318, 108 So. 722 (1926); Smith v. State, 95 Miss. 786, 49 So. 945 (1909). The trial judge, at the conclusion of the trial, refused to submit to the jury the insanity defense issue. The burden was not on the trial judge, however, to review all the evidence and instruct the jury to disregard the evidence which was no longer relevant. Johnson should have renewed her objection.
Johnson had also objected to the admission of references to marijuana in Johnson's statement taken at her apartment on the night of the incident. The statement included references to the marijuana seized as well as questions concerning whether Johnson had smoked any that night. The objection was overruled. For the same reasons given above, this was not reversible error.
Witness Tillman was called by Johnson. He essentially testified as to what he considered Johnson's abnormal behavior, including constant complaints of headaches. On cross, the state questioned concerning the headaches, and asked Tillman if he knew Johnson drank regularly and smoked pot. Tillman answered that he knew she drank and had seen her smoke some pot. Johnson objected and the court overruled. This was proper questioning to rebut the inferences raised on direct concerning Johnson's sanity.

XII.

WAS THERE A MIRANDA VIOLATION?
At issue is the admissibility of a statement made by Johnson to investigator Slack on the night of the crime. Shortly after midnight, deputy Boyd, while at the Johnson apartment, read the Miranda rights to Christine Johnson. He then took a statement from her. That statement was not introduced and is not before us.
One hour later, Slack took a statement from Johnson. Slack testified that he gave Johnson all the Miranda warnings. This was verified by coroner Hayes, who was present. However, the taped interview and the transcript introduced into evidence make it plain that Slack never told Johnson that any statement she made could be used against her. Johnson now contends that this lapse by Slack is fatal to the admission of the statement given to him by her, and, furthermore, that she did not understand the warnings given her.
The trial judge found from the evidence at the suppression hearing that Boyd had *1145 read Johnson all of her rights and that Slack had explained her rights to her. Johnson herself testified that they told her she had the right to remain silent and that anything that she said would be used against her. From this, the trial judge found that Johnson had made a knowing and voluntary waiver of her rights.
The test used to determine if there was an intelligent, knowing and voluntary waiver of the Miranda rights is:
(1) The Miranda warnings must have been given;
(2) When a defendant challenges the voluntariness of an inculpatory statement, the state must prove such beyond a reasonable doubt;
(3) The trial judge must determine from the totality of the circumstances if there has been a sufficient waiver;
(4) The determination of the trial judge will not be reversed unless clearly erroneous, as being against the substantial evidence.
Gavin v. State, 473 So.2d 952 (Miss. 1985); Neal v. State, 451 So.2d 743 (Miss. 1984).
We have repeatedly upheld determinations of waiver when, at the suppression hearing, the officers who were present when the statement was given testified that the Miranda warnings were read, that there was no coercion, threats or promises of leniency, and that the accused seemed to understand the warnings. Coleman v. State, 378 So.2d 640 (Miss. 1979); Billiot v. State, 454 So.2d 445 (Miss. 1984).
The only issue we must address is the effect of Slack's apparent failure to comply with Criminal Rule 1.03. A careful reading of that Rule disposes of this issue. Rule 1.03, in addition to setting out the six warnings which must be given, in pertinent part, says:
These warnings must be made after the person is placed under arrest or physically detained prior to questioning.
The Miranda warnings should be given prior to any subsequent interrogation session with the person in custody even though the warnings were given in the prior interrogations.
When the warnings must be given allows no wiggle room. However, when they should be given allows some very slight room for interpretation, particularly when the two descriptive words are used in such close conjunction as they are here. That "should" conjures up an obligation, if not a duty, cannot be denied. We are of the opinion that Slack had a duty to readvise Johnson of her rights. He was obliged to do so. We cannot say, however, that upon the narrow limits of the facts presented in this case, Slack's breach of this duty rendered the statement inadmissible. There were no threats, there was no coercion, there were no promises of leniency. Johnson was not questioned in the threatening confines of a jail cell. Johnson appears to have understood the warning. This becomes manifest when Johnson herself testified that she was told she had a right to remain silent, anything she said would be used against her. She knew and understood the very warning she now complains was not given to her. Both interrogations took place in her apartment within an hour of one another.
We cannot say that the trial judge was clearly wrong when he found from the totality of the circumstances that Johnson had intelligently, knowingly and voluntarily waived her rights. The question is a close one, and our determination that no reversible error took place here should not be interpreted as a recession from the requirements of Rule 1.03. The state has not suggested nor requested such a retreat in this case, and none is present.

XIII.

WAS IT ERROR TO SUSTAIN OBJECTIONS TO QUESTIONS OF A WITNESS ABOUT JOHNSON'S MENTAL OR EMOTIONAL PROBLEMS?
Upon cross-examination of the witness Sturdivant, a neighbor of Johnson's, her *1146 lawyer asked if Sturdivant knew that Johnson had some kind of mental or emotional problems. The state's objection was sustained. After argument outside the presence of the jury, the court again sustained the objection, ruling that Johnson's lawyer must first establish a factual basis observed by the witness before asking the witness if he had an opinion based upon those facts. The jury then returned and questioning was resumed. Eventually Sturdivant was asked if he had ever observed anything about Johnson that he considered abnormal or unusual. Sturdivant responded that he had. He said Johnson had acted strange since her return to Mississippi from Illinois. Sturdivant then said he followed Johnson up the stairs to her apartment on the day of Ceddrick's death because he knew something was wrong with her. This line of questioning was then abandoned by Johnson's lawyer.
Our rule on this issue is to be found in Alexander v. State, 358 So.2d 379, 384 (Miss. 1978), wherein we said:
The correct rule, therefore, is that a lay witness may express an opinion that another is insane only when a sufficient predicate has been laid to establish that: (1) the witness has had a reasonably sufficient opportunity to observe the subject and (2) has noted his behavior on his part reasonably indicative of an unsound mind and upon which he bases an opinion that the subject was, at the time of his observation by the witness, of unsound mind... . Moreover, before being permitted to express an opinion, the witness must have articulated specific facts concerning observed behavior on the part of the subject sufficient to serve as a predicate for his opinion, and such observed facts must be of a character capable of forming a reasonable basis for an opinion of insanity.
See also Edwards v. State, 441 So.2d 84 (Miss. 1983); Palmer v. State, 427 So.2d 111 (1983); Genna v. Harrington, 254 So.2d 525 (Miss. 1971); In Re Estate of Prine, 208 So.2d 187 (Miss. 1968); Harvey v. State, 207 So.2d 108 (Miss. 1968).
The trial judge correctly applied the law, and the lawyer for Johnson was not precluded from questioning Sturdivant. There is no merit to this assignment.

XIV.

DID THE LOWER COURT ERR IN NOT SUBMITTING THE SANITY ISSUE TO THE JURY?

XV.

DID THE LOWER COURT ERR IN REFUSING INSTRUCTIONS D-3, D-4, and D-5, ON INSANITY?
The trial judge refused all three of Johnson's instructions on insanity on the basis that there was a presumption of sanity and that no evidence of insanity had been put before the court.
Johnson's lawyer argued that Johnson had been submitted to Whitfield for examination, but no doctors had been called to testify from Whitfield. He also pointed out the lay witness testimony that Johnson heard voices, laughed uncontrollably, was depressed and had headaches, and otherwise acted weird and that that was sufficient to put the insanity issue before the jury.
In Gambrell v. State, 238 Miss. 892, 902, 120 So.2d 758 (1960), the Court, quoting from Cunningham v. State, 56 Miss. 269 (1879), stated the following rule:
Every man is presumed to be sane, and, in the absence of testimony engendering a reasonable doubt of sanity, no evidence on the subject need be offered; but whenever the question of sanity is raised and put in issue by such facts, proven on either side, as engender such doubt, it devolves upon the State to remove it, and to establish the sanity of the prisoner to the satisfaction of the jury, beyond all reasonable doubt arising out of all the evidence in the case. (Emphasis added), (citations omitted).
Since there is a presumption of sanity, the initial burden is on the accused to introduce evidence creating a reasonable doubt as to his sanity. Edwards v. State, 441 So.2d 84, 86 (Miss. 1983).
Johnson did not meet her initial burden. Since instructions should not be *1147 given that are not applicable to the facts developed in the case during the trial, it was not error to refuse the three insanity instructions. See Pittman v. State, 297 So.2d 888, 893 (Miss. 1974), and Lancaster v. State, 472 So.2d 363 (Miss. 1985).

XVI.

DID THE LOWER COURT ERR IN GRANTING INSTRUCTION S-1?
Johnson objected to the granting of instruction S-1. (This instruction is set out under Assignment II). Johnson's contention that the instruction should have required the jury to find that the act was done "feloniously, wilfully and of malice aforethought" has already been discussed. Johnson further contends that subsection 3 of the instruction, particularly the phrase "when the mortal or killing blow was struck" in subdivision 3, peremptorily instructed the jury that Johnson inflicted the blow and, therefore, assumes the existence of material facts which should be left for the jury to determine. Instructions cannot assume material facts which are still in issue or not supported by the evidence though not in issue. It is not reversible error, however, to grant instructions if all instructions construed together require the jury to determine the fact in issue. Culberson v. State, 379 So.2d 499 (Miss. 1979); Lumpkin v. State, 413 So.2d 386 (Miss. 1982).
In Dickens v. State, 208 Miss. 69, 94, 43 So.2d 366 (1949), the relevant part of the instruction at issue read substantially as follows: "[A]t the very moment of the fatal blows, if the defendant was inflicting the blows with the deliberate design ... then she was guilty of murder." This instruction was objected to on the ground that it assumed facts not in evidence  that the defendant killed the victim.
We said that it was true that you cannot assume any fact in issue, or one not in issue but unsupported by evidence, however, the "qualifying word `if' eliminates any possibility of there being an unwarranted assumption by the jury." This record reveals that Ceddrick Johnson was killed by a blow to the head and this was established by medical evidence and was not contradicted. The plain wording of instruction S-1 requires the jury to first find from the evidence that Ceddrick Johnson was killed by Christine Johnson and then to find that Christine Johnson was "engaged in the commission of an act emminently dangerous to others and evincing a depraved heart, regardless of human life, when the mortal or killing blow was struck."
Furthermore, when one reads the instructions together, there is no error. The court's instruction C-15 instructed the jury that every person is presumed to be innocent and "this presumption places upon the state the burden of proving the defendant guilty of every material element of the crime with which she is charged." One of the obvious elements of the crime is that Christine Johnson delivered the blow which caused the death.

XVII.

DID THE LOWER COURT ERR IN REFUSING INSTRUCTION D-6 ON CIRCUMSTANTIAL EVIDENCE?
Johnson's attorney offered instruction D-6 on circumstantial evidence which reads as follows:
The Court instructs the jury that although circumstantial evidence is admissible in any case, still in its application the jury must use the utmost caution and vigilance, and it is not sufficient to convict where, assuming all to be proved in behalf of the State which the evidence tends to prove in that behalf, there remains within the evidence or the want of evidence some other reasonable hypothesis consistent with innocence, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth. The circumstances proved may produce a strong suspicion of guilt, but that is insufficient to justify a verdict of guilty at your hands.
The court refused this instruction on the ground that it was repetitive because of court instruction C-15 and court instruction *1148 C-16. Court instruction C-15 reads as follows:
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the state the burden of proving the defendant guilty of every material element of the crime with which she is charged. Before you can return a verdict of guilty, the state must prove to your satisfaction beyond a reasonable doubt (and to the exclusion of every other reasonable hypothesis consistent with innocence) that the defendant is guilty. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of her guilt beyond a reasonable doubt. The defendant is not required to prove her innocence.
Court instruction C-16 is as follows:
If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find her not guilty.
Johnson argues that if the instructions were repetitive, then the court should have taken Johnson's instruction and withdrawn the court's. This contention is without merit. First, instruction C-15 and C-16 properly stated the circumstantial evidence instruction. See Billiot v. State, 454 So.2d 445, 461 (Miss. 1984). Instruction D-6 is a confusing one at best.
Furthermore, when instructions are cumulative with others which were granted the trial court is not required to grant several instructions on the same question in different verbiage. Jones v. State, 381 So.2d 983, 991 (Miss. 1980). There is no merit to this assignment.

XVIII.

DID THE LOWER COURT ERR IN GRANTING INSTRUCTION S-2?

XIX.

DID THE LOWER COURT ERR IN GRANTING INSTRUCTION S-3?
Johnson complains of these two instructions because they dealt with the lesser offense of manslaughter. This argument is laid to rest in the recent case of Flanagin v. State, 473 So.2d 482 (Miss. 1985), in which Flanagin alleged that there was error in granting an instruction which allowed the jury to find him guilty of manslaughter by culpable negligence. We said in that case that since Flanagin had been convicted of murder, he was in "no position to argue that any prejudice resulted from this instruction." Johnson is in the same position.

XX.

DID THE LOWER COURT ERR IN REFUSING TO GRANT INSTRUCTION D-2 ON THE WEATHERSBY RULE?
The Weathersby rule reads as follows: Where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. (Emphasis added).
Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933).
The testimony of the doctors and the physical facts of the condition of the child's body "substantially contradict" the appellant's version of what happened. Therefore, it would have been improper for the court to grant a Weathersby instruction. There is no merit to this assignment.

XXI.

DID THE LOWER COURT ERR IN OVERRULING DEFENDANT'S MOTION, AND RENEWED MOTION, FOR DIRECTED VERDICT ON MURDER?

XXII.

DID THE LOWER COURT ERR IN SUBMITTING THE CRIME OF MURDER TO THE JURY?
This Court has held that when passing upon a motion for directed verdict in a *1149 criminal action "all evidence introduced by the state is accepted as true, together with all reasonable inferences that may be drawn from that evidence, and if there is sufficient evidence to support the verdict, the motion for a directed verdict must be overruled." Shelton v. State, 445 So.2d 844, 848 (Miss. 1984), (citation omitted).
The evidence established that on January 22, 1982, at approximately 3:00 in the afternoon, Johnson entered her apartment carrying Ceddrick, who was then alive. She had been drinking. No one else entered the apartment but Johnson's three other young children. At approximately midnight, officers were summoned to the apartment where they found Ceddrick's body on his bed, badly bruised and cut. The cause of death was extensive blows to the head. The medical experts' testimony discounted Johnson's testimony that the cause of death was an accidental fall of a few feet.
There was sufficient evidence to support the verdict. Since the evidence justified the verdict, submission to the jury of the issue of murder was not error.
For the reasons set forth above, the conviction and sentence of Christine Johnson is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON and ANDERSON, JJ., concur.
DAN M. LEE, J., dissents.