IN THE COURT OF APPEALS

7/29/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-01048 COA

JAMES ROBERT ROWSEY APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. ANDREW CLEVELAND BAKER

COURT FROM WHICH APPEALED: PANOLA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: DAVID L. WALKER

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: JEFFREY A. KLINGFUSS

DISTRICT ATTORNEY: ROBERT J. KELLY

NATURE OF THE CASE: MURDER

TRIAL COURT DISPOSITION: MURDER: SENTENCED TO SERVE A TERM OF LIFE IMPRISONMENT IN THE MDOC; DEFENDANT SHALL PAY ALL COSTS OF COURT

CERTIORIRI FILED: 10/31/97

MANDATE ISSUED: 2/23/98


BEFORE THOMAS, P.J., DIAZ, AND PAYNE, JJ.

THOMAS, P.J., FOR THE COURT:


James Robert Rowsey appeals his conviction of murder, raising the following issues as error:

**I. WHETHER THE VERDICT OF THE JURY OF MURDER IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**


**II. WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION NUMBER C-10.**


**III. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF SHERIFF DAVID BRYAN, LT. BILL ELLIS AND JAMES ROBERT ROWSEY.**

**IV. WHETHER THE CIRCUIT COURT JUDGE ERRED IN LIMITING THE CROSS-EXAMINATION AND CONFRONTATION OF DR. STEVE HAYNE BY DEFENSE COUNSEL.**


**V. WHETHER THE CIRCUIT COURT JUDGE ERRED IN GRANTING THE APPELLEE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR ABUSE OF THE APPELLANT BY JIMMY ROWSEY.**


**VI. WHETHER THE CIRCUIT COURT JUDGE ERRED IN ADMITTING INTO EVIDENCE PHOTOS DEPICTING THE BODY OF MRS. ROWSEY.**


**VII. WHETHER THE CIRCUIT COURT JUDGE ERRED IN SUSTAINING THE APPELLEE'S OBJECTION TO THE APPELLANT'S QUESTION CONCERNING A COMPARISON OF HOW THE APPELLANT'S PARENTS FELT ABOUT THE APPELLANT.**

**VIII. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S JURY INSTRUCTIONS.**

**IX. WHETHER THE CUMULATIVE ERRORS OF THE CIRCUIT COURT JUDGE DENIED THE APPELLANT A CONSTITUTIONALLY FAIR TRIAL.**

Finding no error, we affirm.

FACTS

On the morning of April 7, 1995, James Robert Rowsey (Robert) had breakfast with his mother, Jeanette Rowsey (Jeanette), and his father James Luther Rowsey (James), at his parents' house. At the breakfast table, an argument erupted about Robert's parenting skills regarding his child from his first marriage. James told his son that because of the way he treated his first child he was jeopardizing his relationship with his second child from his second marriage. Robert testified that this made him extremely upset.

Robert testified that after breakfast he sat in the shop that was next to his parents' home, drinking a few beers, trying to calm himself down. His mother was in the house while he was in the shop. Later Robert then went to his parents' home to talk to his mother. While inside he retrieved a gun.

Jeanette left the house and went to the shop. Robert followed. Jeanette called for Robert's father, James, but James had gone to the store to pick up some grease with some men who worked on the Rowsey farm.

Robert testified that he and his mother had words and there was some hitting and tugging. He testified that he put a round into the chamber of the gun to get his mother's attention. Robert stated that as his mother was reaching for his elbow he pulled his arm back, and the gun went off. Robert testified that his mother stood up and said, "You've just killed me." Robert fatally wounded his mother.

The State called sixteen witnesses in all. As its first witness, the State called John Rowsey, brother of Robert, who was present at the farm on the day of the incident. He testified that he saw his brother leaving the shop with a duffle bag and later when he entered the shop he saw his mother lying on the floor. Next, the State called Teddy Jackson, an employee of James Rowsey. He also saw Robert leave the shop with a duffle bag. As its third witness, the State called Steve Shields, a relative of the Rowsey family who worked on the farm. Mr. Shields was the first to enter the shop and find Jeanette Rowsey on the floor. Next the State called Danielle Rowsey, sister-in-law of Robert. She testified that she had dropped her daughter off at the Rowsey home earlier that day so Jeanette could babysit. She stated that she did not notice anything amiss between Robert and his mother.

The State called Terry Mills, a trooper with the Mississippi Highway Patrol. He was the officer who secured the scene. Mark Whitten was called by the State, and he testified that he was the officer who took photographs of the scene and body. Steve Byrd was called by the State as a forensic scientist specializing in firearms evidence examinations. He was the person who performed the tests on the

weapon taken from Robert. The State called Joe Edward Andrews, Jr., a forensic scientist who specializes in micro analysis. He performed the tests and examinations on the body to determine whether or not he could detect the presence or absence of gunshot residue. He testified that particles of gunshot residue were on the back of Jeanette's right hand, between the thumb and first finger on the outside of the hand. Donna Stevens was called by the State as the Panola County Coroner. She examined the body of Jeanette and determined that Jeanette had been shot in the chest. The State called David Bryan, sheriff of Panola County. He took a statement from Robert after he was taken into custody. Bill Ellis was called by the State. He was an investigator of the Mississippi Highway Patrol. He was called to the crime scene and was present when Robert gave his statement. The State called Dr. Stephen T. Hayne, a forensic pathologist. He performed the autopsy of Jeanette and testified that a gunshot wound to the chest caused her death.

The State called Janie Snider. She was at home on April 7, 1995. At 6:00 p.m. she saw Robert walking up her driveway. She advised her husband and called 911. Jimmy Snider, husband of Janie Snider, also testified. He spoke with Robert when he came to his home and secured the gun from Robert. Jimmy Snider waited with Robert until the police arrived.

The State called James L. Rowsey, father of Robert. James testified about the confrontation at the breakfast table. The State called Debra Aven, sister of Robert. She testified that Robert had called her several times while in custody.

## ANALYSIS

## I.

## WHETHER THE VERDICT OF THE JURY OF MURDER IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

Robert submits that the trial court erred by not granting his new trial or judgment notwithstanding the verdict motion. He argues that the State did not prove him guilty beyond a reasonable doubt of either premeditated murder or depraved heart murder, as the shooting was accidental. Robert argues that, at best, the State only presented an arguable case of manslaughter against him.

Motions for directed verdict and JNOV challenge the sufficiency of the evidence supporting a guilty verdict. *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989). We review the evidence on the last occasion when the sufficiency of the evidence was challenged before the trial court, at the time of Robert's motion for JNOV. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993); *Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987).

A motion for a new trial challenges the weight of the evidence rather than its sufficiency. *Butler*, 544 So. 2d at 819. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. *Jones v. State*, 635 So. 2d 884, 887 (Miss. 1994); *McClain*, 625 So. 2d at 781. On review, we accept as true all evidence favorable to the State, and the State is given the benefit of all reasonable inferences that may reasonably be drawn from the evidence. *Id.*; *Griffin v. State*, 607 So. 2d 1197, 1201 (Miss. 1992). The Court will reverse such a ruling only for an abuse of discretion. *McClain*, 625 So. 2d at 781.

The jurors were confronted firsthand with the evidence that Robert claims was insufficient to sustain a guilty verdict. The jury heard the testimony of Robert himself when he described the incident. He told the jury about arguing with the victim, hitting her, and tugging on her head and shoulders. They heard how the victim made her way from her house to the shop, where she was calling for help from her husband. The jury heard how Robert pulled the safety off, chambered a round, and the gun went off. Finally, they heard from Robert how the victim rose from the chair and said, "You've just killed me."

With testimony such as this, the jury obviously resolved the fact questions in favor of the State. In light of the fact that the jurors were in the best position to judge the demeanor and credibility of the witnesses and defendant firsthand, and an appellate court is allowed only the cold record; this Court is not able to determine that "reasonable and fair-minded jurors" could not have found Robert guilty without evidence to the contrary. The trial judge was not in error when he denied the motion for judgment notwithstanding the verdict or new trial.

The jurors resolved fact questions reasonably in favor of the State and the verdict in the case is not contrary to the evidence. The jury may choose to believe or disbelieve any testimony presented and attach as much or as little weight to a particular piece of evidence as they wish. Accordingly, the verdict of the trial court should not be reversed.

## II.

### WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION NUMBER C-10.

Robert argues that instruction C-10 was an erroneous instruction because it did not conform to the indictment but instructed alternative means of effecting murder not alleged. Robert was indicted under Mississippi Code Annotated Section 97-3-19(1)(b), for depraved heart murder. Instruction C-10 instructed the jury on both deliberate design, under Mississippi Code Annotated Section 97-3-19(1)(a), and depraved heart murder.

The Mississippi Supreme Court, in discussing these sections, stated:

The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a).

*Mallett v. State*, 606 So. 2d 1092, 1095 (Miss. 1992) (citing *Windham v. State*, 602 So. 2d 798 (Miss. 1992); *Fairman v. State*, 513 So. 2d 910, 913 (Miss. 1987); *Johnson v. State*, 475 So. 2d 1136, 1139-40 (Miss. 1985); *Talbert v. State*, 172 Miss. 243, 250, 159 So. 549, 551 (1935)).

"With regard to the murder statute, subsections (a) and (b) have 'coalesced.'" *Catchings v. State*, 684 So. 2d 591, 599 (Miss. 1996). As the Mississippi Supreme Court has determined that these two sections are now integrated, we will not hold the trial court in error in giving instruction C-10.**III.**

**WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF SHERIFF DAVID BRYAN, LT. BILL ELLIS AND JAMES ROBERT ROWSEY.**

The defense filed a motion to preclude the State from eliciting certain testimony at the trial from Sheriff David Bryan, Lt. Bill Ellis, and the appellant, James Robert Rowsey. This motion was based on the statement made by Robert to Sheriff Bryan and Lt. Ellis where he stated that after his mother was shot she told him that "You've just killed me." The circuit court denied this motion. The defense argues that this statement was impermissible hearsay.

The circuit court ruled that the statement made by the decedent was admissible under Mississippi Rule of Evidence 804(b)(2), as a statement made under belief of impending death, Mississippi Rule of Evidence 803(1), the present sense impression exception, and Mississippi Rule of Evidence 803(2), the excited utterance exception.

The defense asserts that the circuit court erred in admitting the statement under the dying declaration exception. The trial court held that the autopsy report stated that the bullet perforated both the right and left lungs, the heart, and the aorta of the victim and that the severity of the wounds described in this report supported the finding that the victim spoke believing that her death was imminent, and therefore, the statement was admissible. The Circuit Court was correct in finding the statement admissible under the above enumerated exceptions in regard to Robert testifying on the stand.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss. R. Evid. 801(c). Hearsay evidence is inadmissible unless it falls within a known exception. For a statement of impending death to be a hearsay exception, the declarant must (1) die after making the statement; (2) realize that he or she is mortally wounded; and (3) relinquish any hope of recovery. *Watts v. State*, 492 So. 2d 1281, 1287 (Miss. 1986). "The test for admission under Rule 804(b)(2) is a determination of whether the decedent declarant believed that death was imminent." *Berry v. State*, 611 So. 2d 924, 926 (Miss. 1992) (citing *Ellis v. State*, 558 So. 2d 826 (Miss. 1990)).

Robert argues that Jeanette's statement was not a dying declaration because Dr. Steven Hayne, the forensic pathologist, testified that there was a possibility that Jeanette could have thought, after she was shot, that if she were taken to a hospital that she might survive. Robert's argument is misplaced. The test is not what an expert might think a decedent might have felt, but whether the deceased knew and appreciated her condition as being that of an approach to certain and immediate death. Jeanette's statement, "You've just killed me," is sufficient to show that the decedent felt her death was imminent. Robert has not demonstrated error, and we affirm the trial court's finding the statement admissible as a dying declaration.

The trial court also correctly found that the statement was admissible under either the present sense impression or excited utterance exceptions to the rule against hearsay. The Mississippi Rules of Evidence explain a "present sense impression" as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Miss. R. Evid. 803(1). To be admissible under this exception, the statement must be spontaneous. The determination of spontaneity "is a question for the trial judge, whose action should not be

overturned unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts the exclamation could not have been spontaneous." *Evans v. State*, 547 So. 2d 38, 41 (Miss. 1989). The trial court correctly found that the statement made by Jeanette Rowsey, while she perceived the event, was sufficiently contemporaneous to fit within the exception. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." Miss. R. Evid. 803(2). This exception is broader in scope than the "present sense impression" exception in that the statement need only "relate" to the startling event as opposed to "describing" it. Miss. R. Evid. 803(2) cmt. 2. The statement fits under the "excited utterance" exception since it relates to the events that were unfolding as she made it; it was made while Jeanette Rowsey was in an excited state, and it was made contemporaneously with the event.

The circuit court reached the correct result in allowing Sheriff David Bryan and Lt. Bill Ellis to testify to the statement by Robert; however, the court did not use the correct reasoning. A statement is not hearsay if it is an admission by a party-opponent, being offered against that party, and the statement is the party's own. Rowsey's statement constituted a statement by a party-opponent and thus was admissible against him. Miss. R. Evid. 801(d)(2). An admission by a party-opponent may be introduced at trial when it is "[a] statement offered against a party that is (A) the party's own statement in either an individual or representative capacity . . . ." Miss. R. Evid. 801(d)(2)(A). Here, the State offered the Rowsey's own statement regarding the circumstances surrounding the incident. The trial court did not err by admitting Rowsey's statement.

## IV.

### WHETHER THE CIRCUIT COURT JUDGE ERRED IN LIMITING THE CROSS-EXAMINATION AND CONFRONTATION OF DR. STEVE HAYNE

### BY DEFENSE COUNSEL.

The defense complains that the trial court erred in restricting Robert's cross-examination and confrontation of Dr. Steven Hayne on the amount of fees he received from the district attorney's office for testifying in other homicide cases. Defense counsel wished to question Dr. Hayne on specific cases he had testified for and the fee he received in each case. Robert states that this line of questioning had legitimate impeachment value and should have been permitted.

A review of the record reveals that counsel for Robert asked Dr. Hayne about his fees relating to the case *sub judice*, how often the doctor testified for the prosecution versus the defense, and on the number of times he had testified for the State.

The right of a defendant to confront and cross-examine the witnesses against him is fundamental and cannot be substantially restricted, *Murphy v. State*, 453 So. 2d 1290, 1292 (Miss. 1984), but the right of confrontation is not without limits. Though the scope of cross-examination is ordinarily broad, it is within the sound discretion of the trial judge, who possesses the inherent power to limit cross-examination to relevant matters.

*Hewlett v. State*, 607 So. 2d 1097, 1100 (Miss. 1992) (citations omitted). "[C]ross-examination on an irrelevant point is not permitted." *Pace v. State*, 473 So. 2d 167, 169 (Miss. 1985) (citing *Blair v.*

*State*, 445 So. 2d 1373 (Miss. 1984)).

The scope of cross-examination is within the discretion of the trial judge, and the trial court has the inherent power to limit cross-examination to relevant matters. Although the scope of cross-examination is broad, the trial court properly restricted its use here. The trial court allowed a thorough examination of Dr. Hayne on his prior involvement with the State and the fees he charged for his work with the State. Accordingly, this issue has no merit.

V.

## WHETHER THE CIRCUIT COURT JUDGE ERRED IN GRANTING THE APPELLEE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR ABUSE OF THE APPELLANT BY JIMMY ROWSEY.

Robert argues that the circuit court erred in precluding him from testifying as to prior abuse he received by his father. Robert claims that the prior abuse by his father would explain why he had a gun on the day in question. The trial court excluded such testimony stating that there were severe evidentiary problems with the fact that the father was not the victim and that the father was not in the shop at the time Robert put the pistol in his pocket. However, the trial court allowed the defendant to cross-examine Robert's father regarding his relationship with the appellant. Also, evidence of Robert's fears of his father and his carrying a gun in fear that his mother was seeking help from his father was brought out before the jury.

We find that the trial court did not abuse its discretion in allowing limited evidence of Robert's prior abuse before the jury.**VI.**

## WHETHER THE CIRCUIT COURT JUDGE ERRED IN ADMITTING INTO EVIDENCE PHOTOS DEPICTING THE BODY OF MRS. ROWSEY.

The next issue is whether the circuit court erred in failing to sustain a motion in limine to disallow the introduction of pictures of the deceased.

During the State's case-in-chief, the prosecution admitted three photos of the decedent. The State contends that the pictures were helpful to explain the position of the body, the wounds received, and the manner of death. The trial judge found that the pictures had probative value in assisting the State in the showing the decedent's body after it was moved.

It is well settled that the admission of photographs into evidence rests within the sound discretion of the trial court. *Hurns v.* State, 616 So. 2d 313, 319 (Miss. 1993); *Hewlett v. State*, 607 So. 2d 1097, 1101 (Miss. 1992). We will not reverse the lower court on the ground that the photographs were gruesome and prejudicial, unless the trial judge abused his discretion. *Alexander v. State*, 610 So. 2d 320, 328 (Miss. 1992); *Hewlett*, 607 So. 2d at 1101.

The State is correct in its assertion that the pictures were helpful to the triers of fact. The pictures were not gruesome or inflammatory. The trial judge did not abuse his discretion in determining that the probative value of the photographs outweighed any prejudice to Robert.**VII.**

## WHETHER THE CIRCUIT COURT JUDGE ERRED IN SUSTAINING THE APPELLEE'S

**OBJECTION TO THE APPELLANT'S QUESTION CONCERNING A COMPARISON OF HOW THE APPELLANT'S PARENTS FELT**

**ABOUT THE APPELLANT.**

On direct examination of Robert, his counsel asked him to compare his two parents for the jury. The circuit court sustained the State's objection to this line of questioning. Robert asserts that this line of questioning was both relevant and admissible. However, this is as far as Robert goes. In his submitted brief, there is no argument how or why this is relevant. Nevertheless, the relationship between Robert and his father and his mother was brought before the jury. Several witnesses, including Robert, testified as to Robert's relationship with his mother. Robert also told the jury about the fear he held for his father. As it is unclear to this Court what more this line of questioning would have elicited, and as other testimony was presented as to the relationship between Robert and his parents to the jury, this issue holds no merit.

**VIII.**

**WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S JURY INSTRUCTIONS.**

Robert asserts as error the circuit court's denial of three jury instructions. The first instruction, C-11, was a peremptory instruction.

In passing upon a motion for directed verdict or peremptory instruction, courts must assume that all evidence for the State is true and that all reasonable inferences that may be drawn from the evidence are true and, if from all the testimony there is enough in the record to support a verdict, the motion should be overruled.

*Barker v. State*, 463 So. 2d 1080, 1082 (Miss. 1985) (citing *Warn v. State*, 349 So. 2d 1055 (Miss. 1977); *Rich v. State*, 322 So. 2d 468 (Miss. 1975); *Roberson v. State*, 257 So. 2d 505 (Miss. 1972)).

This Court must give the State the benefit of all reasonable inferences. If reasonable and fair-minded jurors could have reached different conclusions, then the denial of a peremptory instruction was proper. Because there was ample evidence before the jury to support a conviction, there was no error in the denial of Robert's instruction.

Robert also states that the circuit court denied his instruction C-13, a *Weathersby* instruction. Besides this statement, he does not state how this denial was error. First, there is no citation to authority and this Court need not address this issue. *Gerrard v. State*, 619 So. 2d 212, 216 (Miss. 1993) (citing *Wright v. State*, 540 So. 2d 1, 4 (Miss. 1989)). Second, if this Court were to address this issue, it has no merit. The *Weathersby* rule is not a jury instruction, but is a guide for the circuit judge in determining whether a defendant is entitled to a directed verdict. *Blanks v. State*, 547 So. 2d 29, 33 (Miss. 1989). As stated above, Robert was not entitled to a peremptory instruction nor a directed verdict. Accordingly, the circuit court was not in error.

The circuit court also refused Robert's instruction C-15. Defense counsel sought this instruction, but before the circuit court denied it counsel agreed that he would be satisfied with the State's instruction that included the lesser offense of manslaughter. Counsel stated:

So, for the record, I offer an alternative. If the Court denies C-15, then I join in asking for a lesser included manslaughter instruction which is included in the previous instruction Mr. Kelly has submitted.

After counsel agreed to the State's instruction with the manslaughter instruction, the circuit court denied Robert's C-15 on the basis that the instruction was not applicable in light of the elements of the crime. Since the circuit court gave a correct statement of the law, it need not give cumulative instructions. *Johnson v. State*, 475 So. 2d 1136, 1148 (Miss. 1985). The trial court "is not required to grant several instructions on the same question in different verbiage." *Johnson*, 475 So. 2d at 1148. "Furthermore, all instructions are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error." *Laney v. State*, 486 So. 2d. 1242, 1246 (Miss. 1986). Accordingly, this issue has no merit.

## IX.

**WHETHER THE CUMULATIVE ERRORS OF THE CIRCUIT COURT JUDGE DENIED THE APPELLANT A CONSTITUTIONALLY FAIR TRIAL.** Robert states in his last assignment that even if no single issue he has raised on appeal justifies granting a new trial, a combination of factors existed which caused the jury to render an erroneous verdict. Thus, the trial court, in its discretion, should have granted Robert a new trial on that basis and failure to do so amounted to an abuse of discretion.

Although individual errors may not establish prejudice, they may, in combination, equal prejudice compelling a reversal. *See Foster v. State*, 639 So. 2d 1263, 1263 (Miss. 1994). In attempting to avail himself of this principle, however, Robert simply urges this Court to find that the aggregate effect of the various errors made by the trial court created an atmosphere of bias, passion, and prejudice. As we have already discussed the issues and found them all to be lacking in merit, it is clear that Robert received a fair trial in the circuit court.

**THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT ON CHANGE OF VENUE TO DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO PANOLA COUNTY.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**