# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00172-COA

**JOSHUA JAMAL JOHNSON A/K/A JOSHUA JOHNSON**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:          01/26/2021
TRIAL JUDGE:               HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED: MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER
                           BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: ALLISON HORNE
DISTRICT ATTORNEY:         JOHN K. BRAMLETT JR.
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 11/16/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Joshua Johnson appeals his Madison County jury conviction of possession of a firearm by a felon in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014) for which the circuit court sentenced him to serve ten years in the custody of the Mississippi Department of Corrections (MDOC).  Johnson argues that the State presented insufficient evidence to establish his constructive possession of the gun found under the seat of the vehicle that he claims he rented.  Having reviewed the record and relevant precedent, we affirm Johnson's conviction and sentence.

## Facts

¶2. Johnson allegedly rented a 2017 Chevrolet Cruze from an individual named Thomas Cameron, although the date of the rental is in dispute. On June 6, 2019, Detective Errick Peacock of the Ridgeland Police Department pulled Johnson over for running a red light on East County Line Road. Johnson admitted that he ran the light and provided Peacock an identification card but no driver's license or proof of insurance. Peacock smelled an odor of marijuana in the vehicle, and when a second officer arrived, they asked Johnson and his female passenger to step out. While Peacock was beginning his search of the vehicle, Johnson fled on foot. Johnson claimed that he did so because he had some outstanding tickets. After apprehending Johnson and placing him under arrest, Peacock continued the search of the vehicle and found, among other things, a loaded Heritage Rough Rider .22-caliber revolver underneath the driver's seat. After the search, the officers learned that the car Johnson was driving had been reported as stolen from a car dealership on May 19, 2019.

¶3. On October 8, 2019, Johnson, who previously had been convicted of burglary in March 2016, was indicted for the offenses of possession of a firearm by a felon in violation of Mississippi Code Annotated section 97-37-5 and receiving stolen property in violation of Mississippi Code Annotated section 97-17-70 (Rev. 2014).

¶4. At a trial on October 22, 2020, Johnson stipulated that on the date he was arrested, he had previously been convicted of a felony. The State called Officer Peacock, Chris Carr (the manager of the dealership from which the vehicle had been stolen), and Jeremy Watkins (Ridgeland Police Department's evidence custodian).

2

¶5.     Peacock testified about the particulars of the stop, Johnson's flight, and the gun that was found. He said that Johnson told him that he had had the vehicle, which belonged to a friend, for about a month. The vehicle bore a paper tag showing "Brent's Highway 80 Auto Sales." Peacock explained that given the odor of marijuana, he searched the car for contraband and inventoried the items he found according to protocol when a vehicle is impounded. He found backpacks, clothes, shoes, laptops, as well as the loaded Heritage Rough Rider .22-caliber revolver under the driver's seat. The jury viewed the dash-cam video of the traffic stop, which included Johnson's flight, and photos of the vehicle and items confiscated, including a photo of the gun positioned under the driver's seat. Peacock said the gun was easily accessible to the driver. During the stop, Peacock handled the gun and passed it to another officer on the scene because he did not know how to unload it. He said that they do not normally test a gun for fingerprints or DNA, but test-firing might be done for purposes of matching the gun to shell casings, which was not necessary in this case.

¶6.     Chris Carr testified that Thomas Cameron had been employed at his Mazda dealership until April 23, 2019. Cameron was the last one to check out the keys to the Chevy Cruze before it went missing.

¶7.     Jeremy Watkins, an evidence custodian for the Ridgeland Police Department, testified he received the car when it was impounded, and he could verify the chain of custody of the items placed into evidence, including a .223-caliber bullet and a Springfield 9 mm magazine for a pistol. Watkins further said that the gun that was found in the car was not sent to the crime lab; it was the department's policy not to send revolvers and certain caliber guns

3

because the FBI and other federal agencies do not track casings from such guns. But Watkins also testified that the revolver could have been sent to the crime lab to see if they could retrieve a fingerprint. Watkins said that the .223-caliber bullet that was found in the car would not fit into the revolver found, nor would the magazine that was found. Watkins also testified that several days after his release, Johnson came to pick up the other items found in the car.

¶8.     After the circuit court denied Johnson's motion for a directed verdict, but before testimony for the defense began, the circuit court held a *Peterson* hearing[1] to determine if the State could cross-examine Johnson on the specifics of his prior felony. The court reserved ruling until after hearing Thomas Cameron's testimony. Cameron testified that he had worked at the Mazda dealership and left there in April 2019. He was taken into police custody in May, and he was currently in the Rankin County jail because he had been convicted in November 2019 of the sale of cocaine, possession of cocaine, and auto burglary. He was a "trusty" at the jail, providing information-technology work for the sheriff and the courthouse. When questioned about renting the Chevy Cruze to Johnson, Cameron pleaded his Fifth Amendment right against self-incrimination and refused to answer any question about his interactions with Johnson. He denied owning the revolver or leaving it in the vehicle.

---

[1] *Peterson v. State*, 518 So. 2d 632 (Miss. 1987). In such a hearing, the court would decide if the State could impeach Johnson with the particulars of his prior felony conviction of residential burglary. The court would decide if the admission of such evidence was more probative than prejudicial.

¶9. Johnson then called Heaven Marshall, who testified that Johnson is the father of her two children. She gave different dates for when Johnson got the car—the day he was arrested (June 2019), later in October 2019, and a week before he got arrested. Ultimately, she said she was not sure what the date was, but she did take him to get the car from an individual. Marshall said Johnson was not present for their baby's birth in June 2019 because he was working out of town and that Johnson had left the car parked at his employer's local office during that time. She said Johnson had been at her house the night he got arrested, and he was driving the red Chevy Cruze. She also remembered phone calls that she had with Johnson while he was in custody in which they discussed her testimony. In those calls, Johnson told her that her testimony needed to match his testimony.

¶10. After the circuit court ruled that the State could not impeach Johnson with the specifics of his prior felony charges, Johnson then testified. He said that he rented the Chevy Cruze from Cameron about eight days prior to his arrest. He was supposed to return the vehicle, but Cameron did not answer his phone; so Johnson parked the vehicle at his workplace, Malone Roofing, while he went out of town to Louisiana for a week for work. He came home on Friday, and that was the day he was arrested. He testified that during the traffic stop, he fled because he knew he had old fines, there was probably a warrant out for his arrest, and he was on probation. He said that the car was clean when he got it. He had no reason to look under the seat and he did not know there was a gun there. He said he had peaceably pulled over when he was stopped. He admitted that he lied to the officer when he said that he got the car from a friend, but he told the truth when he said that he had smoked

5

marijuana. Johnson further admitted to calling Marshall from the jail and telling her that "your testimony is going to help me a lot, but you've got to be sincere. It's got to match up with my testimony." Johnson testified that the only items of his that he picked up from the police department's impoundment lot were the clothes he had bought for his daughter and his work clothes. Everything else belonged to Cameron.

¶11. In rebuttal, the State called Thomas Strait, who worked for the Madison County Sheriff's Department. He was responsible for responding to subpoenas for phone calls, messages, et cetera. Strait explained that when arrested, a detainee is given a PIN number. Then the detainees make "demo calls" for voice analysis purposes so that when they make a call in the future, their voices can be recognized. The State then entered a disc with recordings of phone calls Johnson made to Marshall. In one recording, Johnson said to Marshall, "Tell them I got the car the same day." In another call, Johnson told Marshall to say he got the car five days before.

¶12. On October 22, 2020, after being instructed and hearing closing arguments, the jury deliberated. The jury found Johnson guilty of possession of a firearm by a felon but not guilty of receiving stolen property. On January 25, 2021, the circuit court sentenced Johnson to ten years of incarceration in the custody of the MDOC. The final judgment was entered the next day. On January 29, 2021, Johnson moved for a new trial or judgment of acquittal. On February 1, 2021, the circuit court denied Johnson's motion, and on February 9, 2021, Johnson appealed.

¶13. Johnson's sole issue on appeal is whether the State failed to present sufficient

6

evidence that he constructively possessed the firearm.

**Standard of Review**

¶14.    "This Court reviews de novo a trial court's ruling on the legal sufficiency of the evidence." *Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss. 2018). When reviewing a case for sufficiency of the evidence, "all credible evidence that is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id*. (internal quotation marks omitted) (quoting *Burrows v. State*, 961 So. 2d 701, 705 (¶9) (Miss. 2007)). "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019).

**Discussion**

¶15.    To convict an individual of possession of a firearm by a felon, "[t]he State must prove two elements beyond a reasonable doubt—(1) the defendant possessed a firearm, and (2) the defendant had previously been convicted of a felony crime." *Kelly v. State*, 305 So. 3d 1134, 1142 (¶27) (Miss. 2020) (quoting *Williams*, 285 So. 3d at 159 (¶12)). In this case, it is undisputed that Johnson was a felon. At issue is whether the State provided adequate proof that Johnson possessed a firearm.

¶16.    "Possession [of a firearm] can be actual or constructive." *Weaver v. State*, 282 So. 3d 1217, 1220 (¶11) (Miss. Ct. App. 2019). Constructive possession allows the State to establish possession when evidence of actual possession is absent. *Billups v. State*, 270 So. 3d 917, 920 (¶8) (Miss. Ct. App. 2018). In this case, because Johnson did not have physical

possession of the firearm at the time police encountered him, the State needed to prove constructive possession. "An item is within one's constructive possession when it is subject to his dominion or control. Constructive possession may be established by direct evidence or circumstantial evidence." *Kelly*, 305 So. 3d at 1143 (¶28). "Circumstantial evidence is entitled to the same weight and effect as direct evidence . . . ." *Cardwell v. State*, 461 So. 2d 754, 760 (Miss. 1984).

¶17. If one owns the vehicle in which contraband is found, a rebuttable presumption of constructive possession arises. *Kelly*, 305 So. 3d at 1143 (¶30). But "[w]hen contraband is found in a vehicle that is not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession. The State is required to establish additional incriminating circumstances in order to prove constructive possession." *Weaver*, 282 So. 3d at 1220 (¶12) (citations omitted).

¶18. In *Billups*, we found sufficient evidence of incriminating circumstances to support the jury's conviction of Billups for possession of a firearm when he was stopped as he was exiting a shed in which a stolen shotgun was found. *Billups*, 270 So. 3d at 920-21 (¶11). We said that "what constitutes a sufficient external relationship between Billups and the rifle to complete the concept of constructive possession is a question which is not susceptible of a specific rule." *Id*. at 921 (¶12). This task is left to the jury, not the court, to decide. *Id*. In *Billups*, *id*. at (¶13), in finding that the jury verdict was supported by the evidence, we referred to *Peden v. State*, 132 So. 3d 631, 633 (¶5) (Miss. Ct. App. 2014), where we found sufficient evidence to convict the defendant of constructive possession of cocaine because,

8

although he was found in a motel room rented by another person, Peden was within arm's reach of a bag of crack cocaine.

¶19.    In *Kelly*, the Mississippi Supreme Court upheld a jury's guilty verdict when the State presented proof of incriminating circumstances, including a defendant's flight from the scene, to establish constructive possession. *Kelly*, 305 So. 3d at 1143-44 (¶31-34). There, after a traffic stop, the defendant fled on foot, was pursued by police, and was apprehended with a magazine from a gun found near him. *Id*. at 1138 (¶7). Police retraced Kelly's route and found a gun that matched the magazine. *Id.* The gun was found "approximately fifty feet" from the location at which Kelly was arrested and located over a fence, near a tree in a yard. *Id*. Owners of the yard's premises testified that the gun was not theirs. *Id*. at 1143 (¶31). The supreme court noted the additional evidence the State established, including Kelly's flight and that Kelly had the opportunity and motive to dispose of the gun. *Id*. at 1144 (¶32). In addition, the magazine found at Kelly's side fit the gun. *Id*. at (¶33). Although the gun itself was found with a magazine already inserted, the supreme court noted that the credibility of witnesses and the weight of the evidence were in the province of the jury. *Id*. The supreme court found that there was sufficient evidence to support a finding of Kelly's constructive possession of the firearm. *Id*.

¶20.    In the case at hand, taking the evidence in a light most favorable to the State, we find sufficient evidence to support Johnson's conviction. The gun was found under the driver's seat where Johnson had been sitting and easily accessible to him just as in *Lewis v. State*, 112 So. 3d 1092, 1096 (¶13) (Miss. Ct. App. 2013), where we found that the evidence supported

9

a conviction of possession of a firearm when a handgun was found under the driver's seat of the car that Lewis was driving. We determined that the handgun was subject to Lewis's dominion and control because he was the driver of the car. *Id.*

¶21. Further, testimony showed Johnson had sole possession of the vehicle for at least one week to ten days. Although it was parked at his place of employment for several days, there was no testimony that the vehicle was unlocked or accessible to others. Johnson himself testified that the vehicle was clean when he got it. The State presented proof of other incriminating circumstances, including Johnson's flight from the scene of the stop and Johnson's phone calls to Marshall to make sure their testimony matched. From this evidence, a rational jury, as the final arbiter of the weight and credibility of the testimony, could find that Johnson had constructive possession of the firearm and was guilty beyond a reasonable doubt.

### Conclusion

¶22. Because the State presented sufficient evidence for the jury to find that Johnson, a felon, had constructive possession of a firearm, we affirm his conviction and sentence and the circuit court's denial of his motion for a new trial or judgment of acquittal.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ. CONCUR.**